# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BAUGHER v. HARMAN.

November 18, 1909.

Absent, Buchanan, J.

1. AUTOMOBILES—*Fright of Horse—Negligence.*—The owner of an automobile who is running his machine in a careful manner, at a slow rate of speed, along a city street thronged with travelers and vehicles, and keeping a lookout to avoid accidents, is not liable for an injury inflicted by a horse taking fright thereat, when he was not aware of any danger from said fright until his machine had reached a point opposite to or had passed the horse's head, and then deemed it less dangerous to pass on than to stop, and when the horse was in charge of three ablebodied men, and there was nothing in its behavior to lead him to suppose that it would become unmanageable.

2. AUTOMOBILES—*Fright of Horse—Emergency—Negligence of Plaintiff.* It is reasonable to presume that the fright of a horse will be increased by stopping an automobile just opposite to him, rather than by passing on by; and if the driver of the machine passes on he is not responsible for the damages inflicted by the horse where the emergency in which he was placed was occasioned by the imprudence of the plaintiff in undertaking to hitch the horse, which was "automobile shy," to a buck-board, in a crowded street, when there were other suitable places to hitch him in the immediate vicinity.

3. NEGLIGENCE—*Burden of Proof—Degree of Evidence—Verdict.*—The burden of proving actionable negligence is primarily upon the plaintiff, who must establish it by affirmative evidence showing more than a mere probability of a negligent act. Its existence cannot be left entirely to conjecture, and the tentative conclusions of juries based upon no sure grounds of inference cannot be upheld. This doctrine is not in conflict with the rule that the verdict of a jury on a question of negligence ought

not to be disturbed where the evidence is such that reasonable men may fairly differ as to whether or not there was such negligence.

Error to a judgment of the Circuit Court of Augusta county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*J. M. Perry, R. S. Ker,* for plaintiff in error.

*Charles & Duncan Curry,* for defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought by the defendant in error, Harman, to recover of the plaintiff in error, Baugher, damages for personal injuries which are alleged to have resulted from the defendant's negligence.

The essential charges in the declaration are that the plaintiff was standing in front of a horse holding it by the rein, while the animal was being hitched to a buck-board by the owner and an assistant on Central avenue in the city of Staunton; that the defendant came along the avenue in an automobile, at sight of which the animal, being in plain view of the defendant, gave evidences of fright, and it was apparent that it was liable to run away and injure the plaintiff; that thereupon one of the men who was engaged in hitching the horse to the buck-board waved his hand in the direction of the defendant as an indication of danger, and it became the duty of the defendant to stop his automobile; yet the defendant, well knowing the plaintiff's danger, continued to advance. Whereupon the horse became uncontrollable and plunged forward, knocking the plaintiff down and pulling the vehicle over him, and inflicting the injuries of which he complains.

There was a verdict and judgment for the plaintiff, to which judgment this writ of error was awarded.

The evidence tends to show: That Central avenue is one of the main thoroughfares of the city of Staunton, and that the accident occurred on court day, when it was thronged with travelers and vehicles; that the defendant, in company with his friend, Miller, was running his machine along the avenue in a careful manner and at a rate of speed estimated at from four to six miles an hour (well within the speed limit fixed by law), and was keeping a lookout to avoid accidents; that he did not discover the fright of the horse until he was in the act of passing it; that the animal was at that time shying, but was being held by two men, and did not become uncontrollable until after the automobile had gone by; that neither the defendant nor his companion saw the man wave his hand as a cautionary signal; that Miller observed that the horse gave indications of shying when they had approached to within "a little less than the width of the court room" from it, but the animal did not, at that time, manifest severe fright; that the horse was shown to be "automobile shy," but that fact was not known to the defendant at the time of the accident. Moreover, the evidence, we think, plainly shows that the defendant was not aware of the plaintiff's danger until his machine had reached a point opposite to, or had passed, the horse's head; and that even if he had discovered the animal's fright earlier he would have seen that it was in charge of three ablebodied men, and that there was nothing in its behavior to lead one to suppose that it would become unmanageable.

One of the alleged grounds of negligence relied on is the failure of the defendant to stop when the fright of the horse first became known to him; but it was not shown that stopping the machine at that time would have averted the accident. As a matter of fact, it is quite as reasonable to presume that it would have increased the animal's alarm. At all events, the emergency which confronted the defendant was not of his making, but was occasioned by the imprudence of the plaintiff and his companions in undertaking to hitch an animal, whose

dangerous character was well known to them, to a buck-board in a crowded street, when it appeared that there were several hitching lots in the immediate vicinity.

The defendant testified to his actuating motive as follows: "I didn't stop then. If I had, it would have been worse, in my estimation, than to go on like I did; and I went on and stopped about forty or sixty feet, or something like that away, and got out of my car and went back. Mr. Harman was holding on to the horse's bridle, and I think the bridle broke, but I don't know what caused him to fall."

There were several assignments of error, but entertaining, as we do, the opinion that the defendant's negligence has not been established, it is unnecessary to discuss them. The principle which devolves upon a plaintiff the burden of proving primarily the existence of actionable negligence is well settled, and does not impugn the oft-repeated rule announced by this court, that the verdict of a jury on a question of negligence ought not to be disturbed where the evidence is such that reasonable men may fairly differ as to whether or not there was such negligence.

In *Northington* v. *Norfolk Ry., &c., Co.,* 102 Va. 446, 46 S. E. 475, it was held: "In an action to recover damages for an injury alleged to have been inflicted by the negligence of the defendant, the plaintiff must show more than a probability of actionable negligence on the part of the defendant. If there is no reliable, substantial evidence to support a verdict for the plaintiff in such an action, it should be set aside."

In *Norfolk & Western Ry. Co.* v. *McDonald,* 106 Va. 207, 55 S. E. 554, the court quotes with approval the proposition laid down in *N. & W. Ry. Co.* v. *Cromer,* 101 Va., 671, 44 S. E. 899, that "the existence of negligence must not be left entirely to conjecture, and courts cannot uphold the tentative conclusions of juries based upon no sure grounds of inference."

Judge Cardwell, in delivering the opinion of the court in the first-named case observes: "The burden is upon the plaintiff to make out her case, which is in the first instance to establish

the negligence of the defendant company by affirmative evidence, which must show more than a mere probability of a negligent act. *Consumers' Brewing Co.* v. *Doyle's Admx.,* 102 Va. 399, 46 S. E. 390." See also *Berkley St. Ry. Co.* v. *Simpson,* 106 Va. 548, 56 S. E. 331.

In the interest of public safety, we fully appreciate the importance of a rigid enforcement of the law against the negligent operation of automobiles over the highways of the Commonwealth. At the same time, such consideration can afford no justification for mulcting the owners or drivers of such machines, either with damages or fines for inevitable accidents not due to their fault or negligence, yet to the happening of which they may have innocently contributed.

For these reasons we are of opinion that the circuit court erred in overruling the motion of the defendant to set aside the verdict of the jury as contrary to the law and the evidence, for which error the judgment must be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*