# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond

ADAMS EXPRESS COMPANY v. ALLENDALE FARM, (INC.)

March 12, 1914.

1. CARRIERS—*Live Stock—Contract Against Injury without Negligence.*—A carrier of live stock may lawfully stipulate that it shall not be liable for loss or damage arising from the condition of the animals themselves, or which may result from their nature or propensities, but that such risks shall be assumed by the shipper. Furthermore, a stipulation that the shipper releases the carrier from liability for delay, injuries to or loss of said animals, unless caused by the negligence of the carrier, its agents or employees, is a valid stipulation.

2. CARRIERS—*Live Stock—Evidence of Injury—Burden of Proof.*—In an action by a shipper against the carrier of live stock to recover damages for injury to the stock while in transit, the shipper must show some injury to the stock which could not be the result of the inherent nature or defects of the stock, before the burden is cast upon the carrier to show that it was not in fault.

3. APPEAL AND ERROR—*Verdicts—Evidence to Support—Negligence.*—While the verdict of a jury on a question of negligence ought not to be disturbed where the evidence is such that reasonable men might fairly differ as to whether or not there was such negligence, still the existence of negligence cannot be left entirely to conjecture, and a verdict based upon no sure grounds of inference cannot be upheld.

4. APPEAL AND ERROR—*Proper Verdict—Admissibility of Evidence—Instructions.*—Where the jury could not have properly found

> any other verdict than the one found, this court will not notice rulings of the trial court on the admission of evidence, nor review its action in giving and refusing instructions.

Error to a judgment of the Corporation Court of the city of Fredericksburg in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Alvin T. Embrey* and *Wyndam R. Meredith,* for the plaintiff in error.

*Wm. W. Butzner,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

In this action the Allendale Farm, Inc., obtained a judgment against the Adams Express Company for the amount of $600, for alleged injury and damage to a high bred Jersey cow bought by an agent of the plaintiff at a public sale at Rushville, Indiana, on May 25, 1912, at the price of $450, and delivered to the defendant at Rushville, Indiana, on May 29, 1912, for shipment to the plaintiff at Fredericksburg, Va. At the same time and under the same contract the plaintiff delivered to the defendant another cow for shipment, which it had also bought at said sale on May 25, 1912, and each cow was valued at $500. The contract, among other provisions, stipulated that the defendant should not be liable for loss or damage arising from the condition of the animals themselves, or which resulted from their nature or propensities, which risks were assumed by the shipper, and the shipper, moreover, released the defendant from liability "for delay, injuries to or loss of said animals,

unless caused by the negligence of its agents or employees.''

''That it is permissible for an express company to stipulate with the shipper for such limitations upon its liability in a contract for the carriage of live stock is well settled.'' *Adams Ex. Co.* v. *Scott,* 113 Va. 1, 73 S. E. 450.

From Rushville, Ind., the shipment was to be made by the express route via Columbus, Ohio, Louisville, Ky., Cincinnati, Ohio, Washington, D. C., and then to Fredericksburg, Va. The cows arrived safely and apparently in good condition at Washington, D. C., in the early morning of May 31, 1912, but a few minutes too late to make connection with the train from Washington to Fredericksburg, and while being held in Washington to await the next express train, the smaller of the two cows was observed to be sick, and was immediately taken from her crate and turned over to a competent and experienced veterinarian for treatment. The other and larger cow was sent forward on the next express train, and, arriving safely and ''in absolutely perfect condition,'' in Fredericksburg, was received and receipted for by the plaintiff. About noon June 2, 1912, A. Randolph Howard, president of the plaintiff company, received notice from an agent of the defendant that the cow detained in Washington was sick, and on the first train he could take Howard went to Washington, consulted his veterinarian, and they together examined the cow at the hospital to which she had been sent, and on the next day Howard wrote the agent of the defendant at Fredericksburg that, ''A careful examination revealed the fact that the cow had sustained several internal injuries from which her death will result in probably 24 hours or less.'' On the day following this letter plaintiff notified the defendant that it

declined to receive the cow, and demanded reimbursement of the cost price thereof, $450, or suit would be instituted.   On June 17 following, and but a little over two weeks after the cow was discovered to be sick and while she was under treatment of two skilful and competent veterinarians in Washington, this suit was instituted.   Contrary to the view expressed in Howard's letter of June 3, 1912, that the cow's death would certainly occur within probably 24 hours or less from "several internal injuries" ascertained by him and his veterinarian, the cow recovered, and on June 25, 1912, was tendered to plaintiff in Fredericksburg, Va., who declined to receive her; and on the trial of this case, at the October term of the court following, plaintiff recovered the judgment here complained of.

Howard, at the trial, testified for the plaintiff that when he saw the cow in Washington at Dr. Collins' hospital about June 20 following the day (June 2, 1912) when he looked at her in the presence of his veterinarian, Dr. Dunn, the cow was lame in the shoulders and had perceptible drag in her hind legs, as one who had suffered a paralytic stroke and had partially recovered, but in these statements he was not sustained by any other witness or any other testimony; nor did the witness. Howard, or any other witness testify to, or even speak of, the "internal injuries" he claimed the cow had sustained in his letter of June 3, 1912.   Dr. Frazier, a veterinarian, testifying for the plaintiff, stated that the hind quarters of the cow had been paralyzed, and attributed it to some injury to or pressure on the spinal cord, but neither he nor any other witness testifies to finding injury of any character to or bruises about the spinal cord or any other part of the cow.   Dr. Mackey, another witness for plaintiff, also diagnosed the trouble with the cow as partial paralysis produced by pressure

on the spinal cord, but he could see no exterior symptoms or abrasions or any indication that the cow had suffered a blow, nor any evidence of displaced bones, although he looked for such. The witness, however, added that the twisting of the spinal cord, causing the alleged paralysis, "might be caused by a sudden jar, like one train hitting another," but this was but an opinion, without any facts stated upon which to base it.

The evidence for the plaintiff, in its most favorable light, only shows that the alleged paralysis of the cow might have been due to a sudden jar, like one train colliding with another, or the car containing the cow being jammed suddenly against another car. To reach the conclusion that the alleged injury and damage to the cow was due to such an occurrence in her transit and not to her nervous temperament, or her nature or propensities, conjecture would necessarily have to be resorted to.

On the other hand, the uncontradicted evidence in the case is that there was no unusual incident of transportation, or collision, or jerk of the train, due to the negligence of the defendant, its agents or employees, to which the sickness or injury to the cow in question could have been reasonably attributed. The defendant introduced as witnesses its agents who were in charge of the shipment of the two cows from Rushville, Ind., to Washington, D. C. Thos. Doyle testified that his run was from Rushville, Ind., to Columbus, Ohio; that he loaded the two cows on the car with special care; that he was continuously in the car during his run; that there was no unusual incident of transportation or jerk of the train, and that when he turned them over to the next messenger of the defendant they were in perfect condition. R. M. Bland, the agent of the defendant running between Columbus, O., and Louisville, Ky., and

in charge of these cattle, testified that they were loaded carefully, and their heads placed so they could get plenty of air and there was nothing wrong with the cows; that there was no collision or "cut-out" of the car, or any jerks or jars beyond those incident to proper transportation. This witness when he testified was no longer in the employment of the defendant. F. J. Link, the defendant's agent in charge at Louisville, testified as to the proper unloading of the cattle, also to the feeding and watering; that when he turned them over to a Mr. Harding, agent of the defendant in charge from Louisville to Cincinnati, "they were in all right condition." Harding testified that during his run there was no disturbance in the car; that the train did not have any collision, nor were the cars roughly shaken, and that on arrival at Cincinnati the cows were immediately taken out of the car and they were in as good condition as when he received them at Louisville. At Cincinnati the cows were put in the car for Washington in charge of E. J. Langyer, defendant's agent from Cincinnati, O., to Washington, D. C., and Langyer testified that they were in good condition and that he gave them the special attention that he was instructed to give; that there was no unusual trouble on the route, nor was there any unusual jarring of the train, nor were the cattle pitched backward and forward; and that the engine of the train and not the shifting engine backed the car into the warehouse of the defendant at Washington. C. M. Lucas, a car-loader of the defendant at Washington, testified that about seven o'clock in the morning of their arrival in Washington, he helped to unload the two cows from the Chesapeake and Ohio Railway car on to the platform of the warehouse of the defendant, and both cows were all right, "they looked all right at that time, but about ten o'clock, Gerry, the

foreman, said there was something the matter with one of them, and we took her out of the crate and sent for the veterinary, Dr. Collins."

Section 1294-1 of the Code is: "Whenever any property is received by a common carrier to be transported from one place to another within or without this State, or where a railroad or other transportation company issues its receipt or bill of lading in this State, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss or damage or injury to such property caused by its negligence or the negligence of any common carrier, railroad or transportation company operating within any territory or State of the United States to which such property may be delivered, or over whose lines such property may pass; and the fact of loss or damage in such case shall itself be *prima facie* evidence of negligence."

Whether or not this statute applies or was intended to apply to shipments over the line of a common carrier, railroad or transportation company from a point without to a point within this State, as well as to a shipment from a point within to a point without this State, which was the ruling of the trial court in this case, it is unnecessary for this court to determine, since the fact that the cow in question was, after she had been removed from the car in Washington in apparently good condition, found to be sick is not such evidence of damage or injury to her as shifted the burden upon the defendant to prove its freedom from fault. The plaintiff's evidence is silent as to any fault on the part of the defendant in the transportation of the cow from the initial point of shipment to Washington, D. C., while defendant's uncontradicted testimony is that she was properly cared for throughout the route, and that there was no

happening to the train or to the cow which could have caused her injury or damage.

Neither of the plaintiff's expert veterinarians could find any injury or abrasion, or even rubbing of the cow's skin, though they diagnosed her trouble as partial paralysis of the hind legs, due to pressure on the spine or blood clot.

A plaintiff suing for damages in such a case must show some injury to the thing shipped, which cannot be the result of its inherent nature or defects before the burden is cast upon the carrier to show that it is not in fault. *N. & W. Ry. Co.* v. *Reeves,* 97 Va. 284, 291, 33 S. E. 606.

Among the authorities cited in that case is *Hussey* v. *Sarragassa,* 3 Woods (U. S.) 380, where it was held that when the damage to a thing shipped is apparently the result of its inherent nature or inherent defects the shipper must show more than its damaged condition before the carrier can be called on to explain..

The rule is emphasized in the recent case of *Adams Ex. Co.* v. *Scott, supra,* which arose out of a contract for the transportation by the express company of a "race stallion" from Tasley, a station on the N. Y. P. & N. Railroad, in Virginia, to Pocomoke City, in the State of Maryland. See also a note to the report of the case in 29 Am. & Eng. Ann. Cases, p. 974, where the authorities are collated, and where it is said: "The reported case presents a peculiarly fitting illustration of the law applicable to contracts limiting the liability of a carrier for injury resulting to animals from their own natural propensities, in that it holds, in conformity with unanimous authority, that such contracts are valid although unnecessary, because under existing law the carrier is not liable to the shipper for injuries resulting to animals from their own propensities or inherent

vices, unless such propensities are aroused by some negligent act of the carrier which contributes to or is the proximate cause of the loss.''

The established rule that the existence of negligence can not be left entirely to conjecture, and the tentative conclusions of juries based upon no sure grounds of inference cannot be upheld, does not conflict with the rule that a verdict of a jury on a question of negligence ought not to be disturbed where the evidence is such that reasonable men may fairly differ as to whether or not there was such negligence. *Baugher* v. *Harman,* 110 Va. 316, 66 S. E. 86.

In the case under consideration there has been a total failure in the evidence, viewed as upon a demurrer thereto, to establish, except by conjecture, the happening of anything in the transit of the cow in question from the point at which she was received by the defendant to Washington, D. C., to which the alleged partial paralysis of the animal could be fairly or reasonably attributed, and, therefore, no other verdict could have been properly rendered by the jury than a verdict for the defendant.

Having taken the view that the failure of the plaintiff to make out a case of actionable negligence against the defendant is controlling, we have deemed it unnecessary to notice assignments of error relating to the admission of evidence for the plaintiff over the objection of the defendant, and to instructions to the jury given and refused at the trial.

The judgment of the trial court complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*