## 9653

### HASELDEN v. HAMER.

(92 S. E. 387.)

APPEAL AND ERROR—SUBSEQUENT APPEAL—RES ADJUDICATA.—A Supreme Court decision that defendant had not acquired the ownership of certain stock, and, therefore, had not converted it, renders that question *res adjudicata* upon a second appeal after a trial upon a supplemental complaint and substantially the same evidence.

Before WILSON, J., Dillon, November, 1914; RICE, J., March, 1915. Reversed.

Action by J. D. Haselden against W. M. Hamer. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion on a former appeal, 97 S. C. 178, 81 S. E. 424, and in the Circuit decree by Judge Rice, as follows:

In 1904, the plaintiff and defendant entered into an agreement for the exchange and sale between them of certain properties, real and personal. Haselden was to convey to Hamer certain farm lands, and deliver to him certain personal property, and in consideration therefor, Hamer was to turn over to Haselden certain mill stocks, convey to him a certain house and lots, and pay him $10,000 in cash. The sum total of each amounting to $57,650.

Haselden conveyed the farm lands as agreed to the value of about $42,500, and personalty to the value of about

FOOTNOTE.—Decision of appellate Court upon sufficiency of evidence to prove fact in controversy as *res judicata* on second appeal, see note in 6 A. & E. Ann. Cas. 791.

$6,000. When Hamer had gotten possession, however, he found the said farm lands encumbered, and in order to remove such encumbrances he was forced to pay out some $28,000. Hamer made a deed of the said house and lot to Haselden and the latter went into possession of this property, but the deed was never delivered, and Hamer also retained the said mill stocks to secure him for the money paid out for Haselden. The parties disagreed and on June 27, 1907, Haselden brought this action against Hamer demanding: 1. An accounting; 2. An injunction restraining Hamer from interfering with Haselden's possession of the said house and lot, from which Hamer was then attempting to eject him under the claim of ownership; 3. For an order requiring Hamer, upon payment of the sum due by Haselden, to transfer and deliver the latter the said mill stocks, which Hamer was then claiming as his own property by forfeiture.

Upon testimony taken by the master the cause came on to be heard by his Honor, Judge Gage, at the Spring, 1913, term of Court for said county, and on May 29, 1913, he rendered a decree holding, in effect, that Hamer had converted the said stocks to his own use, and of his own motion considered the complaint as amended to conform to the proof of conversion. He further held that the house and lot in question was the property of the plaintiff, and that upon the accounting on the basis above set out, Hamer was indebted to Haselden in the sum of $18,000 and interest from the commencement of the action.

Upon appeal to the Supreme Court the judgment of the Circuit Court was affirmed as to the said house and lots, but it was also adjudged that the basis of settlement adopted in the decree of his Honor, Judge Gage, was wrong, and the case was remanded to the Circuit Court for a statement of the accounts between the parties in accordance with the directions laid down in the opinion of the said Court. See 97 S. C. 178, 81 S. E. 424.

After the remittitur had been sent down, his Honor, Judge John S. Wilson, on or about October 5, 1914, upon motion duly noticed, allowed the plaintiff to file a supplemental amended complaint in the cause setting up certain matters which will hereinafter be adverted to.

The case came up before me at the Spring, 1915, term of said Court, and by consent of counsel engaged, in open Court I passed an order referring the case to the master to take the testimony, and that for the convenience of counsel argument should be had before me at chambers. The reference was held on June 10, 1915, and various appointments were made by me for the hearing, but the attorneys were unable to get together until May 12, 1916, at Aiken.

At this point I desire to state, that I have not undertaken to make a full or exact statement of the matters at issue between the parties or of the facts, but only a general outline of same.

In his amended supplemental complaint, the plaintiff alleges that the said mill stocks at the commencement of said action were reasonably worth the sum of $44,100, but now are valueless, and that this condition of said stocks had been brought about by the defendant, alleging further that defendant had converted said stocks to his own use and demands that in the accounting between himself and the defendant, that the latter be held to account for the highest value of said stocks since the said conversion.

The defendant answered, denying that he was responsible for the deterioration of values of said mill stocks, and set up that the questions of conversion and method of accounting had been foreclosed by the judgment of the Supreme Court above referred to, and were now *res adjudicata*. He further denied that the values of said mill stocks at the commencement of said action were as stated by plaintiff.

It appears to me that the question of *res adjudicata* raised by the answer should first be considered. If the defendant is right in his contention, the claim of conversion goes out

of the case and the settlement must be on an entirely different basis from that demanded by the plaintiff.

The doctrine of *res adjudicata* may be successfully invoked when: 1. The parties are the same; 2. The subject matter is the same; and 3. The precise point raised was necessarily involved in a former decision, though not specifically mentioned.

In my humble opinion the points involved and decided by the Supreme Court when they heard this case are as follows:

1. That Judge Gage had no right, of his own motion, to consider the complaint as amended to include the question of conversion, as Haselden claimed and demanded the stock up to the final hearing.

2. That Haselden was the owner of the stock in question.

3. That when Haselden paid to Hamer the amounts due him as principal and interest, he was entitled to possession of said stocks; and, also, that Haselden was entitled to credit for any dividends on said stocks collected by Hamer.

4. That under the case as made, the basis of settlement adopted by his Honor, Judge Gage, was wrong, and the case was remanded for a statement of the accounts between the parties in accordance with the matters determined in two and three.

Briefly stated, that the settlement was not made by the trial Judge upon the basis demanded by the parties themselves through their pleadings, but in a manner arbitrarily determined by him.

If I have construed said decision correctly, it is manifest that the Court excluded the consideration of the question of conversion, and certain it is, to me at least, that such question was not necessarily involved.

With the exception of a statement to the rulings of the Circuit Court, the matter of conversion was mentioned only once in the entire opinion, and in the following connection:

"Even if there was a conversion, Mr. Hamer is responsi-

ble for and Mr. Haselden is entitled to the real value of the mill stock, and there was no evidence of the real value."

Now, since the Supreme Court has directed that the settlement between the parties be made in a certain manner, basing such direction upon the case as it was presented to them, is the plaintiff now precluded from setting up additional matters which he claims have occurred since the suit was commenced, and demanding that the accounts be adjusted upon a different basis?    In a law case he would be, but this is a Court of equity which is not girt about with iron rules, but in a very great degree is free to dispense justice between litigants unfettered by the harshness of strictly legal procedure.    This being so, I do not think Haselden is now barred of other and further relief if the justice and equity of his claims merit it.

The stocks above referred to were in the Maple and Dillon cotton mills, 115 shares of the former and 190 shares of the latter, and there is no manner of doubt, that at the commencement of this action they were very valuable.

In March, 1912, the said mills went into liquidation, largely through the instrumentality of Mr. Hamer, and were merged into a larger corporation known as the "Dillon" cotton mill and new stock was issued in this new mill.    The stocks now in question represented nothing, after the liquidation, and were, therefore, worthless.    It does not alter the case that possibly Haselden might be able to obtain stock in the new corporation in exchange for Maple and Dillon if he can now get them.    The fact is undisputed, that the said mills no longer have any existence as corporate entities, and the stock represents nothing as already stated.

Is Mr. Hamer now to receive from Haselden some $28,000 in exchange for what are admittedly worthless bits of paper?    If the latter has no recourse, but must settle according to the mandate of the Supreme Court, as is contended by defendant, then he is in a bad state indeed.    Still, if his condition in that case was not brought about through

any delict of Hamer he will have received justice. And, as said by Mr. Justice Fraser, in writing the opinion in the case, "In a Court of equity justice ought to be done."

But, independent of any question of conversion, if Haselden can show that through a wrong done him by Hamer he has lost the sum of money represented by these stocks at the commencement of this action, will justice be done now by forcing him to pocket such loss?

It seems to me that the question is answerable in only one way. Under the circumstances mentioned will a Court of equity refuse to hear him?

Facts material to the issues occurring after the former complaint has been served can only be set up by supplemental complaint. Civ. Code Proc., sec. 228; *Bomar* v. *Means,* 47 S. C. 190, 25 S. E. 60.

"Supplemental pleadings should be granted almost as a matter of course in the interest of justice and for the protection of a party's rights where material facts have occurred since the commencement of the suit." 31 Cyc. 500.

Where facts, if any, material to the plaintiff's rights occurred after the commencement of the action? If he is correct in his contention, the stocks had already been converted by Hamer in January, 1907, before the suit was commenced. In his supplemental complaint, however, he alleges that the said stocks were practically destroyed by the above mentioned liquidation, since the action commenced. The said liquidation was completed, according to Mr. Hamer, in March, 1912. The case was not heard by his Honor, Judge Gage, until the spring of 1913, about a year. From the evidence, Haselden undoubtedly knew, or he should have known, of the said liquidation. Why, then, did he not, in that time, ask the Court for leave to file his supplemental complaint, so as to put in issue the facts which he now desires the Court to pass upon? Equity aids the vigilant.

On the other hand, however, all the said matters were well known to the defendant also, and as he does not in his answer charge the plaintiff with laches, I feel that in this case I should follow what appears to be the rule generally adopted by the Courts, according to 16 Cyc. 176, that where laches are not set up as a defense by the answer the Court will not of its own motion interpose it. In addition, the language of the Court in *Central Trust Co.* v. *West India Imp. Co.,* 109 App. Div. 517, 96 N. Y. Supl. 519, applies to the facts in this case:

"It is certainly in the interest of justice that the trial of the case should not go off upon a matter of pleading, and that any relief to which the plaintiff is entitled upon the facts should not be denied it because of a failure to allege facts which exist; and, therefore, under our system, a mere delay in making a motion for relief to serve a supplemental pleading should not of itself defeat the application, unless it appears that in some way the delay has caused a substantial injury to the party to the action."

In the case at bar there is no claim that the defendant has been injured by the delay, and there is no evidence to that effect. I conclude, therefore, that the plaintiff is not now barred of his right to have the Court consider the question of conversion. What, then, is a conversion in law? I think the authorities are agreed that:

"Every act of control or dominion over property, without the owner's authority and in disregard of his rights is, in contemplation of law, a conversion." *State* v. *Omaha Nat. Bank,* 59 Neb. 483, 81 N. W. 319.

There can be no doubt that in January, 1907, Hamer was in rightful possession of the mill stocks in question, and at such time as Haselden made application to Mr. Henry Mullins for a loan with which to repay Hamer, as will hereinafter be set out, proposing to pledge such stock as security. Neither is there now any doubt that Hamer held such stock at that time as security for money paid out for Haselden,

and was entitled to their possession until his money had been paid, or tender of such money was made. But the evidence of Mullins and the plaintiff establish beyond question, that at, or about the time mentioned, Hamer claimed the stock in question as his own property by forfeiture and refused to treat with either the plaintiff or Mr. Mullins in regard thereto, except upon the basis of his ownership of same. This claim of Hamer was clearly a conversion, and excused Haselden from the duty of a tender. Again, I am satisfied that Haselden was never able to ascertain the exact amount due by him to Hamer, and under such circumstances, tender was, of course, impossible. Such conversion, however, did not vest in him any property rights in the said stocks. Haselden was still the owner and had the option of suing for their possession or their value. The stocks being valuable at that time, he sued for their possession. Since the commencement of the action, however, they have become valueless, and he then had the right, as I have already held, to demand of Hamer their value, which he is now doing under supplemental complaint.

The evidence of Mr. Mullins and the plaintiff makes it clear enough that Haselden applied to the former for a loan with which to pay Hamer the sums due him, and for the repayment of which Hamer held the stocks as a pledge. It is as certain as evidence could establish under the circumstances, that Haselden would have obtained such money from the bank of which Mullins was an officer, but for the fact that Hamer denied Haselden's ownership of the said stocks which Haselden proposed to hypothecate as security for the loan, and refused to treat with either of said parties in regard to same except upon the basis of his ownership. That the stock was very valuable at this time appears established beyond question. It may be true, that Hamer warned Haselden of the capricious fluctuations of values of mill stocks, and at first rather discouraged the latter from going into the trade, but that cannot excuse him from any wrong

done Haselden after the transaction had been entered into: It is true, also, that the stocks in the hands of Haselden may have, and probably would have, depreciated in value, just as much as they did in the hands of Hamer, but could he have gotten possession of them, Haselden would then have been in possession to protect himself against loss. He had his hands tied, however, by Hamer, and he was helpless.

Mention has been made hereinabove of the liquidation of the Maple and Dillon mills. On or about March, 1912, they ceased to exist as corporate entities, and when they perished, the stock of said mills perished also. It is reasonably certain that Hamer was largely instrumental in bringing this about, it may have been to the best interest of all concerned that this was done, but certain it is that Hamer cannot now deliver to Haselden the said stocks as required by the mandate of the Supreme Court, unless the Court is satisfied with the shadow and not the substance.

It may be true, as testified to by Hamer, that he arranged to keep out of said litigation, and subsequent consolidation, the amount of stocks in said mills so as to enable him to turn same over to Haselden if the Court so decreed. It may be true, also, that if he turned over to the latter shares of stock in said mills equal in number and of the same kind, that this would have been a substantial compliance with his duty in that respect—as one dollar in currency is equal in value to any other dollar in currency. But it is plain mockery now for the defendant to offer to turn over to the plaintiff such shares which he knows are valueless.

The above observations are made in great part independent of the doctrine of conversion, but we come now to consider the liability of Hamer under that proposition of law. In some cases the measure of damages is the highest value of the property converted up to the time of trial, and in other cases the value at time of conversion depending in great measure upon the circumstances of each particular case. If the property was converted under a *bona fide*

claim of right it would be inequitable to hold the defendant to a valuation caused by some sudden rise in the market, but if the conversion was a bald trespass, then the wrongdoer should be charged with the highest valuation. See *Carter* v. *DuPre,* 18 S. C. 179; *Reynolds* v. *Witt,* 13 S. C. 9; *Gregg* v. *Bank,* 72 S. C. 458, 52 S. E. 195. In the case now under consideration the conversion took place in January, 1907, and the witness, McLellan, testifies that in the following June Maple stock was worth 125 and Dillon 150. These values were not disputed by Mr. Hamer, and I assume if they were incorrect he would have so testified, because Hamer, better than any other, knew their value.

I am satisfied that Hamer was honest in his belief that he had a right to the said stocks under his agreement with Haselden, but even so, I do not think he can complain if we charge him with the value of the stocks fixed by McLellan. Mr. Justice Fraser, in the opinion of the Court, says that in the trade values were comparative only, and that even if there was a conversion, there was no evidence of the value of the stocks, etc., but now there is such evidence, and of a character that is convincing.

In view of the case as made up to this time it is now immaterial as to the valuation of the lands which Hamer received in the trade. He fixes the amount which Haselden owed him at the commencement of this action at $28,640.75, and the defendant has not shown that this is not correct. This covers the entire transaction between him and the plaintiff. It is common knowledge that lands have appreciated in value and mill stocks have depreciated since 1907, but this has nothing to do with the case. When the trade was completed, the farm lands, stocks, and other personalty advantages which such ownership entailed, and the same is to be said of Haselden's ownership of the mill stocks. If, while Hamer was rightfully holding said stocks as Haselden's property they declined in value fifty per cent. it was the

latter's loss, and if, on the other hand, they rose in value one hundred per cent., then it was his gain.

Stating the accounts of the parties upon the principles above set out we charge Hamer with 190 shares of Dillon mill stock at $150, $28,500; 115 shares of Maple mill stock at $125, $14,375; total, $42,875. Credit him with total indebtedness of Haselden, $28,640.75; balance due Haselden, $14,234.25.

On this amount Hamer should pay interest from the commencement of this action at the rate of seven per cent. per annum, amounting in the aggregate up to August 27, 1916, of $9,134, making the sum total due Haselden by Hamer up to date of this decree and for which he is entitled to judgment against Hamer, twenty three thousand three hundred sixty-eight and 25-100 ($23,368.25) dollars, and it is so ordered and decreed.

*Messrs. Gibson & Muller, Haynsworth & Haynsworth and Stevenson & Prince,* for appellant. *Messrs. Haynsworth & Haysworth,* submit: *It was error to allow the plaintiff to set up by way of supplemental complaint the matters alleged therein, and it was likewise error to consider these matters as a ground of relief in this action,* and cite as to: (1) *The nature of the supplemental complaint:* Code Civ. Proc., sec. 228; 21 S. C. 442; 31 S. C. 204; 60 S. C. 140. (2) *Whether the facts as alleged and proved in this case can be set up by way of supplemental complaint in this action, being inconsistent with allegations in original complaint:* 2 Mills 228; 155 U. S. 13; 31 Mich. 309; 111 Mass. 270; 36 S. C. 424; 12 S. C. 50; 95 N. W. 344. *The matters set up in the supplemental complaint were concluded by the decision of the Supreme Court;* and cite as to *res judicata:* 17 S.C. 189; 52 S. C. 174; 105 S. C. 147; Bail. Eq. 330; 17 S. C. 35; 100 S. C. 483; 65 S. C. 410; 37 S. C. 150; 83 S. C. 575. *Assuming that these matters were not concluded, has a conversion of the stocks been shown, and if so, what damages have resulted? As to conversion:* 102 Am.

St. Rep. 30. *Liquidation of corporation by majority of stockholders:* Civil Code, secs. 2812, 2813. *The exchange of stock, with the understanding that the exchange should be cancelled if Haselden was not satisfied, could not in the nature of the case operate to deprive Haselden of any right:* Jones Pledges, secs. 507, 509, 571; 11 Fed. 115; 10 Am. Rep. 282; Jones Collateral Securities, secs. 571 and 571a; 64 S. W. 262 and 264; 63 S. E. 1115; 43 L. R. A. 737. *The pledgee of stock has the right to cause the stock to be transferred to him and to collect dividends and vote the stock:* 11 S. C. 486; 70 S. C. 432; 22 A. & E. Enc. 907.

*Mr. W. F. Stevenson,* for appellant, submits: *After the Court decides a case and remands it for a specific purpose, to wit, to restate an account, the lower Court cannot over objection allow amendments to change the issues, and do something else:* 101 S. C. 584; 8 S. C. Eq. 330; 105 S. C. 147. *Laches as a defense need not be specifically pleaded, but may be considered at the hearing as a matter affecting the merits of the claim in the judicial conscience:* 94 U. S. 806; 23 L. Ed. 324; 124 U. S. 183; 31 L. Ed. 396; 62 S. C. 73; 39 S. E. 950; 70 S. C. 171.

*Messrs. Willcox & Willcox, Mullins & Hughes* and *S. M. Wetmore,* for respondent, submit: *Facts occurring after commencement of action can only be brought before the Court by supplemental pleadings and not by amendment of the original pleadings:* Code Civ. Proc., sec. 228; 17 S. C. 123; 47 S. C. 190; 94 S. C. 16. *Supplemental bills are brought upon discovery of any new matter, since the original bill and answer, and the proceedings had in the cause, in order to supply the defect in some former proceedings, where it is too late to amend the same:* 31 Cyc. 499, 500; 1 Del. Ch. 88; Dec. Dig. "Equity," par. 295g; 42 Wis. 233; 19 Cent. Dig., par. 582j; Colm. 1039 and 1041. *If the original bill is well founded, it is then permissible to set forth*

*subsequent facts, showing a right to further relief, within the scope of the relief sought in the original bill:* 4 DeS. Eq. 330; 19 Am. Dec. 400; 74 Fed. 67; 41 Fed. 725; 41 Ark. 17; 114 Fed. 120; 96 N. Y. S. 519; 109 App. Div. 517. Cite: *As to conversion:* 119 Am. St. Rep. 917; 2 Mills 239; 1 N. & McC. Eq. 592; Cooley Torts 448; 48 Am. Dec. 470; 80 Mo. 400; 26 Am. Dec. 353, 355; 1 S. C. 445; 7 Post. 466; 25 Ky. 84; 34 Am. St. Rep. 579; 21 L. R. A. 117; 2 Strob. Eq. 370; 52 S. C. 508; 100 N. W. 679; 81 N. W. 319; 139 U. S. 67; 50 Wis. 501; 71 N. W. 440. *Tender unnecessary:* 78 Wis. 218; 218 N. W. 267; 7 S. D. 229; 63 N. W. 904; 41 Tex. 449; 1 Bail. 193; 2 Grant Cas. 393; 14 N. Y. St. Rep. 248; 63 Barber 622. *Damages for conversion:* 42 Minn. 420; 42 Am. Dec. 500; 33 Fed. 236; 1 N. & McC. 338; 6 Rich. L. 310; 18 S. C. 184; Dudley 62. *Evidence that similar stock sold for a certain amount shortly before the alleged conversion will justify a verdict fixing its value at such sum:* 54 N. Y. Sup. Ct. 525. *Plaintiff may recover the highest value up to the time of trial:* 1 N. & McC. 344; 72 S. C. 458; 89 S. C. 538; 91 S. C. 439. *Nothing occurring after the commencement of the action could be res adjudicata under the original complaint. The conversion of the stock occurred in 1912 when the mills were merged.*

March 23, 1917.

The opinion of the Court was delivered by Mr. Justice Fraser.

This is a second appeal. The first is to be found in 97 S. C. 178, 81 S. E. 424.

The respondent in his argument says:

"This was originally an action instituted by the plaintiff against the defendant: (1) For an accounting; (2) for an order enjoining the defendant from interfering with plaintiff's possession of a certain house and lot; (3) for an order

requiring defendant, upon payment by plaintiff of the amount found due by him, to transfer to plaintiff the stock mentioned in the complaint (mill stock) which had been pledged to defendant by plaintiff to secure certain sums of money borrowed."

In the first decree of the Circuit Court we find the following:

"If Hamer had sold the stock to pay the debt, that would have been an executed transaction. If Hamer had held the stock as security for the debt, that would have been his right. He did neither; he took the stock for himself; took it at his own price and allowed Haselden no surplus; in legal parlance he converted it."

In the judgment of this Court on appeal we find in 97 S. C. 184, 81 S. E. 42:

"So that as a matter of law the stock belonged to Haselden."

In 97 S. C. 185, 81 S. E. 426:

"Mr. Haselden is the equitable owner of the stock, and entitled to all credits from dividends arising thereon and otherwise, and the case will have to be remanded to the Court of Common Pleas for Dillon county for a restatement of the account on this basis. Mr. Hamer is entitled to his debt with interest."

After that decision, instead of taking the account on that basis, the plaintiff moved for, and was allowed, to file a supplemental complaint and charge that Hamer had converted the stock to his own use. A trial was had on the supplemental complaint, and, without any material change in the testimony, the Court of Common Pleas again found that Mr. Hamer had converted the stock to his own use. From the order allowing the supplemental complaint and the decree based thereon, the defendant has again appealed.

There are 17 exceptions, but the respondent in his argument has said:

12—107.

"The question as to whether this matter is *res adjudicata* and if the supplemental complaint was proper both hang on the same proposition of law; for, if the plaintiff was obliged to sue for the conversion when he wanted the actual stock which was his and unlawfully detained by defendant, then to have filed a supplemental complaint was error for the reason that such matters as were alleged in said supplemental complaint had been adjudicated by this Court."

There is, indeed, but one question in this case. Is the matter of "conversion" *res adjudicata?* It is *res adjudicata.*

In the first Circuit decree it was held that the stock that had been Haselden's had become the stock of Hamer. That change of ownership was called "conversion." When this Court held as a matter of law that there had been no change of ownership, it followed inevitably that there had been no conversion. When this Cort said, "even if there was a conversion," the parenthetical clause "but there was not" was clearly to be understood. The facts found were wholly inconsistent with a conversion, as set forth in the first Circuit decree. The status was finally determined in the first appeal, and the case remanded for the purpose of a restatement of the accounts.

The order allowing the supplemental complaint and the Circuit decree based thereon are both reversed.

Mr. Hamer offers the new stock in the consolidated mills for his old stock. With this exception (the choice of stock), the case is remanded to the Court of Common Pleas to carry out the former order of this Court.

Mr. CHIEF JUSTICE GARY and Mr. JUSTICE HYDRICK concur in the opinion of the Court.

Mr. JUSTICE WATTS, *dissenting.* For the reasons stated in the Circuit decree, I think the exceptions should be overruled, and the judgment affirmed.

Mr. JUSTICE GAGE did not participate in the consideration of this appeal.