[No. 8543. Department One. September 7, 1910.]

CLARA KIMBLE et al., Appellants, v. FRANK STACKPOLE et al., Respondents.[1]

HIGHWAYS— RUNAWAY TEAM—PLEADING— GENERAL DENIAL—ISSUES AND PROOF. In an action for injuries caused by a runaway team, a general denial of an allegation that the team, while under the joint control of the defendants, ran into the plaintiff, admits of evidence upon the part of the defense that the team was running away and beyond the control of the defendants.

PLEADING—DEFENSES—CONTRIBUTORY NEGLIGENCE—INCONSISTENCY. The plea of plaintiff's contributory negligence is not necessarily inconsistent with a general denial of defendant's negligence.

TRIAL—ORDER OF PROOF—REBUTTAL. In an action for injuries caused by a runaway team, evidence in rebuttal to show that the team was not beyond control when it reached a certain point, may be excluded, where the plaintiff's witnesses were examined fully on this subject on their examination in chief.

HIGHWAYS—RUNAWAY TEAM—NEGLIGENCE—SUFFICIENCY. In an action for injuries caused by a runaway team, a verdict for the defendants is properly directed where there was nothing to show what caused the team to run away, or that it was a fractious team, and it appeared that the defendants were not negligent and did all in their power to control it.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered April 28, 1909, upon the verdict of a jury rendered in favor of the defendants by direction of the court, in an action for personal injuries sustained through a collision with a vehicle. Affirmed.

[1]Reported in 110 Pac. 677.

*Richard Gowan,* for appellants.

*Thomas Smith* and *Million, Houser & Shrauger,* for respondents.

CHADWICK, J.—On April 14, 1908, plaintiffs were returning from a funeral at Mount Vernon. The way led over a viaduct, or an overhead crossing of the Great Northern railway tracks, which was about three hundred feet long. Their buggy was the first vehicle in front of the hearse, which was driven by defendants. The hearse was followed by several teams. Plaintiffs had entered the viaduct and were about half way over, when the hearse and team driven by defendants came upon the viaduct. The hearse team got beyond the control of the driver and, in passing, collided with the vehicle in which the plaintiffs were riding, and threw Mrs. Kimble to the ground. She suffered painful injuries, and now seeks compensation in damages. After plaintiffs had rested their case, defendants moved for a nonsuit, which was denied. After the whole case was in, defendants moved for a directed verdict, which motion was granted. Judgment of dismissal was entered, and plaintiffs have appealed.

It is the theory of the plaintiffs, that defendants carelessly and negligently drove upon the viaduct at a time when a train was approaching in plain view of the driver; that the team became frightened at the passing train and ran against the plaintiffs' buggy; that it was the duty of the defendants to stop their team at the approach of the viaduct and wait until the train had passed. The gist of the complaint is that the defendants

"did then and there with a team of horses attached to said hearse in the joint possession and under the joint control of the said defendant Frank Stackpole, and the said defendant Frank Esser, by and through his said agent and servant, while driving and operating said team and hearse in a careless and negligent manner, did carelessly and negligently drive said team and hearse, while under their joint control as hereinbefore alleged, against and upon the plaintiff Clara Kimble, whereby the said Clara Kimble was greatly injured."

The answer is in the form of a general denial, with an affirmative plea of contributory negligence.

The first error assigned is that the court erred in admitting testimony to the effect that the team drawing the hearse was beyond the control of defendants when it reached and passed over the viaduct, and also when it ran against the buggy in which appellants were riding. This contention is grounded upon the theory that it is nowhere alleged that the team was running away, and that respondents should be bound by the allegations contained in their affirmative answer. We do not understand the rule to be that a lack of control over the team must have been specially pleaded to admit the evidence complained of. Appellants had alleged that the accident occurred at a time when the team was under the control of respondents. A general denial put this allegation in issue, and it was competent to offer any evidence that would challenge or defeat the truth of this assertion. Nor is the plea of contributory negligence inconsistent with the general denial. Where the defense rests upon a denial with plea of confession and avoidance, it is not inconsistent unless the one necessarily and actually contradicts the other. A seeming or logical inconsistency is not enough. *Bowers v. Good*, 52 Wash. 384, 100 Pac. 848; *Irwin v. Holbrook*, 32 Wash. 349, 73 Pac. 360; *Davis v. Seattle Nat. Bank*, 19 Wash. 65, 52 Pac. 526; *Loveland v. Jenkins-Boys Co.*, 49 Wash. 369, 95 Pac. 490; *Corbitt v. Harrington*, 14 Wash. 197, 44 Pac. 132. This is a general rule and is applied where a general denial is followed by the plea of contributory negligence. *Pugh v. Oregon Imp. Co.*, 14 Wash. 331, 44 Pac. 547, 689; *Glass v. Colman*, 14 Wash. 635, 45 Pac. 310.

It is next insisted that the court should have allowed plaintiffs to show on rebuttal that the team was not beyond the control of the defendants at the time it was driven on the viaduct. It would seem from the record that practically every eyewitness, including the defendants, had been sworn and testified in plaintiffs' behalf. This question had been

fully covered by the case in chief. Appellants' witnesses in rebuttal had already testified; one, that the hearse was going at the rate of ten miles an hour; another, eight or ten miles an hour while it was yet two blocks from the viaduct, and another that it was going at a "stiff gait." These witnesses, as well as others, had detailed the occurrence fully, and. the court properly refused to recall the witnesses who had testified in chief.

It is also urged that the court erred in directing a verdict. Our attention is invited to the case of *Abby v. Wood,* 43 Wash. 379, 86 Pac. 558. In that case the proximate cause of the injury was the intoxication of the defendant. In this case there is no evidence showing negligence or from which negligence could be reasonably inferred. What caused the team to run away is not made to appear with any degree of certainty. It is not. shown that the team was fractious, or that defendants should have used more than ordinary care and prudence under the circumstances attending the accident. The horses were livery horses. One of them had been worked on the hearse three years, and the other five years. At the time they had attained such speed as to indicate that they were beyond the control of the driver, there was no way open but the viaduct. An honest and earnest endeavor was made to pass appellants' buggy, even to driving upon an elevated footway at the side of the wagon road. Both respondents had hold of the lines and tried to stop the team. One of them called out to appellants and warned them so that they might drive to one side. The rule of care in such cases is ordinary care, or such care as prudent men ordinarily use under like circumstances, taking into consideration the time, place, and condition of the highway. A driver will not be charged with negligence unless it appears from the evidence that, by the exercise of ordinary care or watchfulness, he could have seen the danger to which a person on the highway is exposed in time to avoid the injury.

The mere driving of the team on the viaduct while another

team was on it could not be held to be negligence as a matter
of law, it being shown that there was room for one team to
pass another.   Mr. Kimble, who was just ahead of respond-
ents, saw the train, he fixed it at about a quarter of a mile
away, and he "saw that he had time to drive over."   Re-
spondents may have judged in the same way.   Whether they
were negligent in driving over a viaduct when a train was
approaching would depend primarily upon the character of
the team.   There is no evidence tending to show, nor was any
effort made to prove, that the team was fractious or liable
to become frightened at railroad trains.

A case in point is that of *Cadwell v. Arnheim*, 152 N. Y.
182, 46 N. E. 310, wherein it was said:

"It will not do to submit a question of negligence to a
jury, where the facts are equally consistent with the presence
or the absence of negligence; or where the jury could do no
more than surmise as to the negligence of the defendant.
The difficulty with the plaintiff's case was that the facts failed
either to disclose any fault in the driver of the defendant's
horses, or to warrant a jury in deciding that he could have
controlled the action of the frightened animals. . . .  On the
other hand, there was the testimony of the coachman himself,
which was not shaken, or affected as to his credibility, by
the evidence of any facts, to the effect that all his efforts to
stop, or to direct, the horses, were futile. . . .  To submit
the case to the jury, under the evidence, was to invite their
speculation upon the question; with nothing in the facts to
militate against the truth of the coachman's statements."

To the like effect is the case of *Cotton v. Wood*, 8 C. B.
Rep. (N. S.) 566, where it is said by Williams, J.:

"There is another rule of the law of evidence, which is of
first importance, and is fully established in all the courts,
viz., that, where the evidence is equally consistent with either
view,—with the existence or nonexistence of negligence,—it
is not competent to the judge to leave the matter to the jury.
The party who affirms negligence has altogether failed to
establish it.   That is a rule which ought never to be lost
sight of."

The case was one of negligent driving.  This principle has
been frequently announced by this court.  The cases are col-
lected in *Whitehouse v. Bryant Lumber & Shingle Mill Co.,*
50 Wash. 563, 97 Pac. 751.  It was there said:

"No legitimate inference can be drawn that an accident
happened in a certain way by simply showing that it might
have happened in that way, and without further showing that
it could not reasonably have happened in any other way."

We agree with the trial judge that the cause of the run-
away was not shown, that the team was beyond the control
of the respondents at and before the time the accident oc-
curred, and that, so far as the evidence shows, the accident
cannot be charged to the negligence of the respondents.  Mrs.
Kimble was the victim of an accident for which the law allows
no compensation.

The judgment is affirmed.

RUDKIN, C. J., MORRIS, and GOSE, JJ., concur.

FULLERTON, J. (dissenting)—I am compelled to dissent
from the conclusion of the majority as expressed in the fore-
going opinion.  In the first place I am unable to find any
issue in the pleadings on the question whether or not the
team driven to the hearse was running away before it reached
the viaduct on which the collision occurred.  The majority
reach the contrary conclusion, it appears to me, by pervert-
ing the meaning of the word "control."  In the allegation
quoted from the complaint, namely, that the defendants "did
then and there with a team of horses attached to said hearse
in the joint possession and under the joint control of the said
defendant Frank Stackpole, and the said defendant Frank
Esser, by and through his said agent and servant, while driv-
ing and operating said team and hearse in a careless and
negligent manner, did carelessly and negligently drive said
team and hearse, while under their joint control as herein-
before alleged, against and upon the plaintiff Clara Kimble,
whereby the said Clara Kimble was greatly injured," it ap-

pears to me manifest that the pleader meant no more than to allege that the team was at the time of the accident under the joint proprietorship of the two defendants; that is, that they stood in the position of owners, responsible for the negligent management of the team. This allegation was necessary in order to show their liability for the accident, and to convert it into an allegation that the driver had the team under due subjection at the time he approached the viaduct is but to play upon words in disregard of their real sense. It was error, therefore, to allow the respondents to show the fact in evidence without a modification of their pleadings.

In the second place, the appellants should have been permitted to contradict the evidence of the respondents to the effect that the team was running away at the time it approached the viaduct. While it is true that some of the plaintiffs' witnesses did testify to the speed at which the team was then traveling, it is true that none of them testified that it had then gotten beyond the control of the driver; indeed, their attention was not directed to that fact, no issue having, up to that time, been made upon it. The question was material because the defendants had sought to justify driving the team on the viaduct in the face of the approaching train by offering evidence tending to show that the team had then gotten so far beyond the control of the driver that they could not be brought to a stop. The plaintiffs, for that reason, had the right to offer contradictory evidence, and the court clearly erred in denying them that right.

If it be true, therefore, that the pleadings were sufficiently broad to admit the evidence objected to, there was plainly a mistrial because of the action of the court in rejecting the evidence offered in rebuttal. This being true, this court ought not to determine the cause on the evidence that appears in the record, but should send it back for a new trial, and determine the question whether or not negligence on the part of the defendants was shown, only after a full hearing

in which all of the admissible evidence offered by the plaintiffs is before the court.