SOUTHERN UTILITIES COMPANY, *Plaintiff in Error*, v. MARY MATTHEWS, *Defendant in Error.*

Opinion Filed June 29, 1922.

1. In an action for damages for the wrongful death of a person where the plaintiff's case rests upon circumstantial evidence as to the negligence of the defendant's servant which it was alleged caused the injury, if the circumstances raise a fair presumption of negligence on the defendant's part or that of

his servant and plaintiff is entitled to recover. But the existence of negligence cannot rest in mere conjecture. If the evidence is such that reasonable men may differ as to whether or not there was negligence the verdict of the jury finding that it did exist should not be disturbed.

2. In an action for damages for the wrongful death of a person the burden is upon the plaintiff to prove such facts from which it can fairly be inferred that the defendant or his servant was guilty of such negligence as was the proximate cause of the injury to the deceased.

3. Where in an action for damages for the wrongful death of another it is alleged that the defendant's agent and servant carelessly and negligently caused and allowed a certain mule and wagon, of which the defedant was the owner and which was used by the defendant in the delivery of ice to its patrons, to collide with and strike against the truck on which plaintiff's husband was riding and to strike against the plaintiff's husband the burden is upon the plaintiff to show that the driver of the wagon either negligently allowed the mule and wagon to collide with the truck or that he deliberately or by design brought about such collision. It is not sufficient to introduce evidence which merely suggests a possibility of negligence. When the evidence is equally consistent with the absence of negligence on the part of defendant or its servant as with it, the party affirming the negligence cannot be said to have established it as against the defendant.

4. In an action for damages for the wrongful death of one resulting from alleged negligence on the part of the driver of a mule and wagon in causing or allowing the mule and wagon to collide with a fire truck on which the deceased was riding and one feature of the defense is that the accident was caused by the mule's action in spite of the efforts of the driver to control it, who in such efforts used ordinary caution to restrain and control the mule, it is error on the part of the court to refuse requested instructions embodying the appropriate rule of law when such instructions as requested were applicable to the evidence in the case.

A Writ of Error to the Court of Record for Escambia County; C. Moreno Jones, Judge.

Reversed.

*Sullivan & Sullivan,* for Plaintiff in Error.

*John P. Stokes,* for Defendant in Error.

ELLIS, J.—On December 17th, 1920, Jack Matthews, who was an employee of the fire department of the municipality of Pensacola was seriously injured by being thrown from a fire truck on which he was riding while responding to a fire alarm sent in somewhere near the east end of Gonzales street east of Tarragona street.

The declaration alleges that the accident occurred because of the negligence of the agent and servant of the Southern Utilities Company in causing and allowing a mule and wagon, owned by the company and used in the delivery of ice to its patrons, to collide with the fire truck and striking Matthews throwing him from the truck to the pavement caused the injury resulting in his death. The action was brought by the widow. The case went to trial after a demurrer to the declaration was overruled upon the plea of not guilty. There was a verdict and judgment for the plaintiff and the defendant seeks a reversal here upon writ of error. No assignment of error is based upon the order overruling the demurrer.

The plaintiff's case rests upon the alleged negligence of the defendant's servant in causing and allowing the mule and wagon to collide with the fire truck which was being driven by an employee of the fire department along the street in responding to an alarm of fire.

Tarragona Street, sometimes called Railroad Street, runs north and south, there are three railroad tracks laid upon it where it intersects Gonzales Street which runs east and west and at the point of intersection Gonzales Street on the east side of Tarragona is twenty-two feet two inches wide. At the south east corner of the intersection of the two streets a ''fire hydrant'' is located about fifteen feet east of the nearest railroad track and about the same distance from Gonzales Street curbing. A fire alarm had been sent in from a point on Tarragona Street north of the intersection of the two streets but as the location was not in the territory which was assigned to the station to which Jack Matthews was attached the trucks from that station did not respond. A water hose had been attached however to the fire hydrant and extended northward along Tarragona Street east of the nearest railroad track across the line of Gonzales Street.

A second fire alarm was sent in from a point in the ,neighborhood of east Gonzales Street. That location was also not in the territory assigned to the fire station to which Matthews was attached. Inasmuch however as the station in whose territory or district the first alarm was given had responded to that call, the station to which Matthews was attached responded to the second call sending two trucks. Each truck followed the same route to the fire, eastward along Gonzales Street across Tarragona.

On Gonzales Street just eastward of Tarragona, how far is not definitely stated, there were two automobile trucks, one on the north side of the street and one on the south side, opposite, immediately behind the first truck stood the defendant's ice wagon to which was hitched a mule driven by a negro. The first fire truck passed over the water hose without bursting it and safely through the narrow passage

2—Vol. 84.

way between the automobile truck and ice wagon on one side of the street and the automobile truck on the other. The second fire truck, upon the left side running board of which Matthews was standing sounding the siren or bell which gives warning of the approach of the truck, was being driven by a man named Adrian Roache. The truck ran upon the water hose and burst it; the driver increased the speed of his machine to overcome the slight incline of the street at that point and undertook to pass through the narrow space. His machine passed safely between the two automobile trucks, one upon one side and one upon the other side of the street, but according to the testimony of Mr. Roache the mule which was standing with its head toward the west, or Tarragona Street "dashed out from behind one of the automobiles" as the fire truck passed. Either the head of the mule or the shaft of the ice wagon struck Matthews and he was thrown to the ground. The driver of the fire truck stopped his machine within twenty-five or thirty feet and went back to where Mr. Matthews was lying and rendered what assistance he could.

On cross examination Roache said that the fire truck was passing the automobile when the mule "dashed out" and he did not know whether the driver of the ice wagon was on the driver's seat or not.

There was evidence to show that when the first truck passed along Gonzales Street the mule and ice wagon were going westward along the street and turned out to avoid the truck, and the second truck, the one on which Matthews was riding was not far behind the first. The conflict in the evidence upon the speed at which the fire truck was driven and whether the mule came out into the path of the fire truck and whether it skidded after passing over the hose is very stubborn.

· The driver of the truck and another fireman who was also upon the machine with Matthews testified that the truck was driven at a speed of approximately fifteen miles an hour, that the mule came into the fire truck's path and that the fire truck did not skid. Upon the other hand defendant's witnesses, bystanders, said the truck was traveling about twenty or more miles an hour, that the mule did not move from the curb where it was standing before the accident and that the fire truck skidded after passing over the hose and collided with the ice wagon. There is no conflict as to where the driver of the ice wagon was, he was on the seat of the wagon holding the reins.

The fifth assignment of error is that the court erred in overruling the first five grounds of the motion for a new trial, which attacks the verdict as unsupported by law and the evidence. According to the certificate of the judge the bill of exceptions contain all the evidence.

There was no direct or positive evidence of negligence on the part of the driver of the ice wagon. The plaintiff's case rests upon circumstantial evidence as to negligence of the defendant's servant.

If the circumstances raises a fair presumption of negligence on the defendant's part or. that of his servant the plaintiff is entitled to recover. But the existence of negligence cannot rest in mere conjecture. If the evidence is such that reasonable men may differ as to whether or not there was negligence the verdict of a jury finding that it did exist should not be disturbed. See Rosenfield v Arrol, 44 Minn. 395, 46 N. W. Rep. 768; City of Omaha v. Bowman, 52 Neb. 293, 72 N. W. Rep. 316; Hughes v. Boston & M. R. R., 71 N. H. 279, 51 Atl. Rep. 1070; Houg. v. Girard Lumber Co., 144 Wis. 337, 129 N. W. Rep. 633; Adams Express Co. v. Allendale Farm, 116 Va. 1. 81 S. E. Rep. 42.

Negligence is a want of ordinary care, it is the gist of this action and the burden is upon the plaintiff to prove facts from which it could fairly be inferred that the defendant's servant, the driver of the ice wagon, was guilty of such negligence in the handling or driving of the mule as was the proximate cause of the injury to Matthews. The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant's servant.

The allegation of the declaration is that the defendant's "agent and servant carelessly and negligently caused and allowed a certain mule and wagon of which the defendant was owner and which was used by the defendant in the delivery of ice to its patrons to collide with and strike against the truck on which plaintiff's husband was riding and to strike against plaintiff's said husband."

To support this allegation the following evidence was submitted by the plaintiff. The witness Roache, driver of the fire truck said: the first truck was ahead about two blocks away. "It passed through all right and I would have passed through all right if the road had remained clear. But it was obstructed by an ice wagon." After he had crossed Tarragona Street and gone about fifty or seventy-five feet which was near, if not along side the ice wagon, "The mule dashed out from behind one of the automobiles."

Counsel then asked the following question: "When you went about this 50 or 75 feet the ice wagon dashed out from behind the automobile?" "Yes sir." There was an automobile on each side of the street "and the ice wagon dashed out from behind one of them." "If it had stayed behind the automobile we would have passed him, ice wagon, in safety. What caused the collision was *he* turned out be-

hind the automobile." "Q. What was the cause of the accident? A. The ice wagon coming out from behind the truck. Q. If the man driving the ice wagon had kept the ice wagon behind the automobile where it was when you came along would there have been any collision?" A. "It would have prevented the accident." "It came out far enough to catch Matthews.'

Leon Johnson, an employee of the fire department riding at or near the rear end of the truck said: "We came down the hill and crossed the hose and had to go up here, just as we got there—just before we got there I seen three fellows standing in the middle of the street doing their hands that way (indicating) waving that there way telling somebody to get back, when we went across the track and went up this way there was an automobile on that side of the street and one on this side of the street and just as we got to the place to go through this here fellow he turned the mule out, when he turned the mule out I heard the crash." "It was after we got to the coffee wagon that the negro turned the ice wagon out with the mule."

There is no dispute as to the location of the ice wagon. It was immediately behind the coffee wagon. "Just enough came out to knock him (Matthews) off." "He (Matthews) was knocked off by that mule." "When the truck came along Gonzales Street to the point of the accident, people were waving up that way in the direction of the ice wagon (indicating) waving them back. It looked to me like they were waving at the ice wagon, and if I ain't mistaken there were two or three niggers waving."

The driver of the first wagon, Fillingin, said that he had no difficulty in passing as he came along, he saw the ice wagon coming and "saw him slow down and go over to the side and he turned into the yard, drove clear in the yard

before he got him turned in behind the automobile and then the mule's head stuck out the least bit.'' The coffee wagon was, I judge, about seventy-five or one hundred feet from the hose. The ice wagon was right behind the coffee wagon, right jam up against it.''

The driver of the ice wagon said: ''I was standing still on the north side of the street and the truck came along and struck me.'' Q. ''Were you near the curb? A. Yes, sir, right against the curb.''

The firemen testified that the fire truck did not ''zig zag'' when it crossed Tarragona Street and burst the hose. Roach said the truck did not ''zig zag or skid.''· ''If it had zig zagged or skidded it would naturally have hit one of the trucks on each side.'' Probably the words ''zig zag'' and ''skid'' were used by him and others as synonymous terms. The witness Johnson said the truck did not ''zig zag.''

Counsel observed that the ''Ice wagon didn't heed the warning it kept coming out.'' But of course counsel's remarks are not evidence. The witness' reply was: ''Whenever they wave it means all the way through for the truck.'' Which cannot be said to be acquiescence in counsel's suggestion. The testimony of several by-standers was to the effect that the ice wagon was standing against the curb on the north side of Gonzales Street immediately behind the coffee wagon, that opposite to them, on the south side of the street there was a wood wagon standing near the curb. That when the truck passed over the hose and burst it the truck skidded and ran into, or so near, the mule and ice wagon that when the mule jerked up its head the shaft on the left side struck Mr. Matthews who was hurled from the truck. We are unable to perceive how this evidence raised a fair presumption of negligence against the defendant.

If Johnson's statement was correct, the fire truck was north of the center of the street, that is to say, on the side of the street where the accident occurred, and if Roache was correct, the truck was passing upon that side of the street near the ice wagon when the "mule dashed out from behind the automobile" "just far enough to catch Matthews." There was no evidence that the driver of the ice wagon drove the mule into the path of the approaching truck. If the mule dashed out upon its own impulse it cannot be said that the driver allowed it to do so.

If Fillingin, the driver of the first truck was correct in his testimony the driver of the ice wagon exercised due care in avoiding the first truck and sought to give it all available space in which to pass. The statement of Johnson that the driver "turned the mule out" just as the truck "got to the place to go through", and that "it was after we got to the coffee wagon that the negro turned the ice wagon out with the mule" tends to show that the truck was being driven not in the center of the street but to the north side. To say that the driver drove his mule upon the approaching truck which was within a few feet of him, the length of the coffee wagon, after having given all the space possible for the passage of the first truck is the merest conjecture involving inconsistency of conduct unreasonable to a high degree.

The statement of the witness, Johnson, that the "negro turned the ice wagon out with the mule," is contradictory of the testimony of both Roache and Fillingin and contrary to the testimony given by all other witnesses. Roache said: "It (referring to the mule or shaft) came out far enough to just catch Matthews." Fillingin said: the driver of the ice wagon turned in behind the automobiles and "then the mules head stuck out the least bit." It cannot be said that this evidence tends to show that the ice wagon was driven

upon the approaching truck, but rather tended to show that the truck was driven too close to the north side of the street. It was said that the wood wagon which was standing on the south side of the street prevented the truck from passing on that side but according to Roache the automobile as he spoke of it was directly opposite the coffee wagon behind which the ice wagon stood. Johnson placed the automobile on the south side of the street "kind of half way between the automobile (coffee wagon) and the ice wagon on the opposite side of the street."

We do not find that the evidence in any reasonable view sustains the finding that the driver of the ice wagon caused the mule and wagon to collide with and strike against the fire truck. Nor do we think that the evidence sustains the view that he negligently allowed it to do so.

We are not unmindful of the rule that the verdict of the jury should not be disturbed if there is any evidence which in any reasonable view would sustain it, and that the judgment of the trial court in approving the verdict by overruling a motion for a new trial should not be disturbed unless clearly wrong. But we must also consider that the defendant should not be required to pay for the loss and suffering of the unfortunate plaintiff whom it has not wronged. That the plaintiff has suffered as the result of someone's negligence may or may not be true, but that negligence has not been shown to be that of the defendant. Tentative conclusions of juries resting upon no sure grounds of inference cannot be upheld any more than verdicts based upon conjectural criticisms by witnesses can be said to rest upon substantial evidence.

It was the duty of the defendant acting by its servant to place the ice wagon so near to the curbing on the north side of the street as was necessary to avoid the approach-

ing fire truck. That this was done the evidence clearly establishes. It was the defendant's duty to use ordinary care in keeping the mule and wagon in that place of safety until the fire truck passed, that it failed to exercise such care is not established by the mere fact that the mule's head or wagon shaft struck the deceased who was riding upon the running board of the truck. No presumption of negligence arises from the accident in a case of this kind. The thing does not speak for itself.

There was a duty resting upon the city under the circumstances and that duty was to exercise due care to avoid collision with the automobile and ice wagon which were placed upon each side of the street. If, as Mr. Roache said, the mule "dashed out from behind the automobile" as the truck passed, that circumstance did not of itself show that the driver failed to use ordinary care to restrain the animal.

At best it suggests a mere possibility of negligence, and the law will not permit the jury to act upon mere surmise cr conjecture. See Baulec v. New York & Harlem R. R. Co. 59 N. Y. 359; Raby v. Cell, 85 Pa. St. 80; Wittkowsky & Rintels v. Wasson, 71 N. C. 451; Smith v. First National Bank, 99 Mass. 605; Caldwell v. Arnheim, 152 N. Y. 182, 46 N. E. Rep. 310.

Even if the evidence in this case could be said to support with equal probability two inconsistent theories, it could not be said to be sufficient to support the verdict because when the evidence is equally consistent with the absence of negligence on defendant's part as with it the party affirming it has altogether failed to establish it.

Mr. Justice Sharswood speaking for the court in Raby v. Cell *Supra* said, "At one time, indeed, it was the admitted doctrine that if there was any, the least evidence,

a mere scintilla, the question must be submitted to the jury. But that doctrine has been very justly exploded both in England and in this State. There must be evidence of such a character that the mind may reasonably rest upon it, though it may be with some hesitation. A jury ought never to be left to mere conjecture when sympathy or some other equally improper motive will be sure to turn the scale. It is not too much to insist that there shall be evidence of circumstances of which the conclusion asked may be reasonably predicated.''

Our conclusion upon this assignment of error is that it is well taken and the court erred in denying the motion for a new trial.

The first assignment of error rests upon the refusal of the court to give requested instructions to the jury upon the ''liability of the defendant in the event the accident was due to the mule becoming frightened while in case of the defendant's servant using ordinary care and precaution in handling the mule.''

Several instructions were requested by the defendant submitting the proposition that if the jury believed from the evidence that the accident was caused by the mule's actions in spite of the efforts of the driver to control him who in such efforts used ordinary caution to restrain and control the mule the plaintiff could not recover against the defendant. These instructions numbered seven, eight, nine and ten were refused by the court. The refusal to give the requested instructions was harmful error. They announced correct propositions of law and were applicable to the evidence adduced. See 3 Shearman and Redfield on Negligence (6 Ed) 626; 1 R. C. L. 1107; O'Brien v. Miller, 60 Conn. 214, 22 Atl. Rep. 544; Kimble v. Stackpole, 60 Wash. 35, 110 Pac. Rep. 677.

It is unnecessary to discuss the other assignments of errer.

The judgment is reversed.

TAYLOR and WEST, J. J., concur.

BROWNE, C. J., and WHITFIELD, J., dissent.

WEST, J., concurring.

I concur in the reversal of this case upon the ground that the refusal of the trial court to give the instructions requested by defendant, mentioned in the opinion, was error.