[No. 24067. Department Two. November 29, 1932.]

IRIS CULLEN, *Respondent*, v. OSCAR L. KIMBRO *et al.,*
*Appellants.*[1]

[1]Reported in 16 P. (2d) 445.

*Roberts, Skeel & Holman, Frank Hunter,* and *Leon W. Barnard,* for appellants.

*Attwood A. Kirby,* for respondent.

BEALS, J.—Plaintiff, Iris Cullen, brought this action against Oscar L. Kimbro and Sands Motors Company, a corporation, for the purpose of recovering damages for personal injuries suffered by her when the automobile driven by defendant Kimbro, in which plaintiff and two other persons were passengers, left the highway. The action was tried to the court, sitting with a jury, and resulted in a verdict in plaintiff's favor in the sum of five thousand dollars. The trial court gave plaintiff the option of accepting a reduction of the award to the sum of three thousand five hundred dollars or taking a new trial. Plaintiff accepted the reduction, and from a judgment in plaintiff's favor in the sum of three thousand five hundred dollars, defendants appeal.

Appellant Sands Motors Company, a corporation (which will be hereinafter referred to as Sands), was engaged in business in the city of Seattle as a dealer

in Studebaker automobiles. Appellant Kimbro was a "free lance" salesman, selling Studebaker cars for appellant Sands, which appellant furnished for Kimbro's use, under a conditional sales contract regularly filed for record, a Studebaker sedan, upon the door of which appeared the words "Silver Flash," words used by those selling Studebaker cars in connection with their advertising campaign featuring "free wheeling." Appellant Kimbro paid for the license for the car, as well as all operating expenses thereof, using the car as he pleased, whether on company or private business.

Respondent and Miss Frances Harlan were close friends, and, the latter's mother, a Mrs. Cochrane, having indicated to Sands that she might be in the market for an automobile, Mr. Kimbro endeavored to make the sale. Mrs. Cochrane stated that her daughter was the one to be pleased, and the latter desired the approval of her intimate friend, this respondent. Mr. Kimbro then showed several cars to Miss Harlan and to respondent. Miss Harlan testified that Mr. Kimbro took her to the office of the Sands company and several times showed her different cars. It is clear that Mr. Kimbro, in the course of his employment, was endeavoring to make a sale which would result to the mutual advantage of appellants.

In the course of time, it was arranged that Mr. Kimbro should take respondent and Miss Harlan for a ride on the afternoon of April 25, 1931, respondent testifying that a car was to be demonstrated, and that appellant Kimbro was to explain the principle of "free wheeling". Both respondent and Miss Harlan testified that Miss Harlan would not go without respondent, as the latter's opinion concerning the car was desired. Another salesman in the employ of appellant Sands joined the party, and the four went across lake Wash-

ington to a private home, where meals were served, the party there partaking of some refreshments.

An early start was made for home, respondent riding in the front seat with appellant Kimbro, who was driving. Shortly after passing the town of Redmond, the car left the roadbed, and, after traveling a considerable distance along the side of the highway and undergoing considerable punishment, came to a rather violent stop. Respondent suffered severe injuries, for which she sought compensation in this action.

The case was tried upon the theory that the respondent was a guest, and that, in order to prevail, it was necessary for her to show gross negligence on the part of the driver, appellant Kimbro.

Concerning events after leaving Redmond, respondent testified as follows:

"Shortly after we left Redmond, Mr. Kimbro started to speed, and he stepped on the gas, and the speedometer started to go up, and it went 30, 35, 40, 45, and while he was tearing along the highway at 45, 50, I started to scream. First I said, 'Please don't go so fast; we are in no hurry.' Mr. Kimbro said, 'Don't tell me how to drive, I used to drive on the racetrack.' Then he started to drive faster, and he took these curves, and as I said, I don't know which curve he means, but we met a car and Mr. Kimbro almost hit it, and I think I screamed real hard, and Mr. Kimbro said, 'Go ahead and scream and let's see how loud you can holler.' And when I screamed, he said, 'Fine, you are doing fine; keep it up.' Then I looked at the speedometer, and it said 70 straight up. You could see it very, very plainly. And we came to that white fence, and just as we—just as we went by that white fence that curve loomed up, and Mr. Kimbro went into the ditch. When he went into the ditch there, then the car started bumping and I was knocked around on one side, and on the gear shift, and my head hit the dashboard, and those instruments, and whatnot, and we tore over the ditch, and I screamed, sitting there and wondering if we were

going to turn over, or if we were going to stop, or what was going to happen. Is that what you wanted to know?''

Carl Schweizer, testifying on behalf of respondent, stated that he was proceeding towards Redmond, and that he met the Kimbro car just before the accident, and that the Kimbro car was, in his opinion, proceeding at over sixty miles an hour. Henry O. Evans, who, at the time of the accident, was in a house nearby, testified that his attention was called to the passing of the Kimbro car, and that he then heard screaming; that the car was going at not less than sixty-five miles an hour, and that, as the witness watched the car, it left the highway and went into the ditch beside the road; that the car crossed the ditch and then came back into the same.

Appellants argue that it should be held, as matter of law, that the record contains no evidence which supports a finding of gross negligence on the part of appellant Kimbro, and contend that certain admitted physical facts, together with testimony introduced on behalf of appellants, demonstrate that the testimony of respondent and that of her witnesses is manifestly untrue. Appellant Kimbro testified that, after rounding a curve just prior to the time the car left the road, he increased his speed to approximately forty miles an hour, when his car was crowded off the highway by another machine. Appellants also call attention to the fact that the automobile did not turn over, and argue that the damage to the car was less than would have been occasioned had it been proceeding at as great a rate of speed as seventy miles per hour. Appellants also contend that respondent's testimony was impeached, not only by the physical circumstances of the accident, but by two superior court records as to prior injuries and the state of her health

before the accident, and as to other matters not germane to the particular questions concerning appellants' liability.

It is clear that Mr. Kimbro was a skillful driver of long experience. The fact that his car did not turn over, under all the circumstances of the case, cannot be considered as demonstrating that respondent's testimony was untrue. Respondent's testimony is corroborated in important particulars, to-wit, as to the speed of the car, and as to the fact that respondent was screaming prior to the accident. According to her testimony, appellant Kimbro wilfully and deliberately drove his car at such a high and dangerous rate of speed as to justify the jury in finding that he was guilty of gross negligence.

In such cases as this, the element of deliberate and wilful disregard of the safety of others is important, and we are satisfied that the trial court did not err in holding that the question of gross negligence was for the jury. The authorities cited by appellants on this phase of the case are not controlling. Such conduct as respondent's evidence indicated on the part of Mr. Kimbro shows a perverse wilfulness and foolhardiness more serious and reprehensible even than the failure to devote as little attention to his driving as constitutes slight care.

Appellants contend that the trial court erred in permitting respondent's witness, Carl A. Schweizer, to testify on rebuttal concerning the accident. This is a matter in which the trial court has considerable discretion, and examination of the record convinces us that no reversible error was committed in receiving the testimony of this witness at the time the same was offered.

Appellant Sands contends that its motion for a nonsuit interposed at the conclusion of respondent's

case, or its motion for dismissal or for a directed verdict at the conclusion of the entire case, should have been granted. In support of this assignment of error, appellant Sands argues that, on the afternoon of the accident, Mr. Kimbro was using the car for his own pleasure and for the purpose of a social outing for himself and his friends, and that appellant Sands is nowise responsible for any injuries occasioned by Mr. Kimbro's negligence, assuming that such negligence existed.

Appellant Sands turned the automobile in question over to Mr. Kimbro under a contract of conditional sale, which was regularly filed. Mr. Kimbro paid nothing on account of the purchase of the car, and it does not appear that he was expected to pay anything therefor. He took out his own license for the car and paid the expenses of the operation thereof. He was compensated solely by commissions earned on sales made by appellant Sands to purchasers procured by him. Mr. Kimbro evidently exercised complete control over the car as to where and when he would drive the same and the persons whom he would invite to ride with him. The car bore the words "Silver Flash" painted thereon for the purpose of aiding an advertising campaign then being carried on by appellant Sands. This appellant cites several cases which, it contends, support its position that Mr. Kimbro occupied a position equivalent to that of an independent contractor, and that his employer is not liable to respondent.

Mr. Kimbro had been in the employ of appellant Sands, as an automobile salesman, for about ten years. His employer fixed the time at which he should commence work each day, and one day each week he was assigned to work on the floor of the company sales-

room. Title to the automobile which Mr. Kimbro was driving on the day of the accident was vested in appellant Sands, and the car was turned over to the salesman for his use in looking for prospects, demonstrating, or any other purpose to which he desired to put the same. Mr. Kimbro's acquaintance with respondent commenced while he was endeavoring, under instructions from Sands, to effect a sale of a Studebaker car to Mrs. Cochrane. Testimony introduced on behalf of appellants tended to prove that, on the day of the accident, Mr. Kimbro was using the car for his own pleasure only, and that the automobile trip had no business object whatever.

The question of the liability of appellant Sands, under the doctrine of *respondeat superior,* was submitted to the jury, and we are satisfied that it cannot be held, as matter of law, that appellant Sands is entitled to judgment in its favor. The opinion of this court in the case of *Vernarelli v. Sweikert,* 123 Wash. 694, 213 Pac. 482, is in point upon the question now being discussed, as are also the cases of *Kludas v. Inland-American Printing Co.,* 149 Wash. 180, 270 Pac. 429, and *Dahl v. Moore,* 161 Wash. 503, 297 Pac. 218. The opinion of the supreme court of California in the case of *Fearn v. Hamlin,* 8 P. (2d) (Cal.) 1015, is also of interest in this connection.

Appellants rely upon the case of *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056. In the case cited, the agent was selling medical supplies throughout a defined territory, and was free to use any method of transportation he desired. The automobile which he was using was being purchased by him under a contract of conditional sale upon which he was actually making payments. In the case at bar, appellant Kimbro was using a specimen of the very article which

he was selling for the benefit of both appellants, the automobile being the property of appellant Sands. The case cited does not support appellants' position, and the other authorities cited by appellants do not require a holding that the trial court erred in the rulings now under consideration.

Appellants contend that the trial court erred in refusing to give an instruction which was requested defining gross negligence, appellants contending that the instruction given by the court on this phase of the case was inadequate and incomplete. While the instruction requested by appellants defined gross negligence more explicitly than did the instruction given by the court on this phase of the case, we are unable to hold that the instruction given was so inadequate as to require reversal of the judgment appealed from.

The court instructed the jury that appellant Kimbro was by respondent charged with several acts of gross negligence, and that it was not necessary that respondent establish by a fair preponderance of the evidence that Mr. Kimbro was guilty of each and every act of negligence charged in order to entitle respondent to a verdict, but that it was sufficient if the jury should find that Mr. Kimbro had been guilty of one or more acts of gross negligence, etc. Appellants contend that respondent relied upon only one act of gross negligence, to-wit, excessive speed. It is impossible to believe that the jury could have been misled by the instruction of which appellants complain, and we find therein no reversible error.

Appellants further contend that the damages awarded respondent were excessive, and that appellants, for this reason, are entitled to a new trial. Respondent admitted that, during the fall of 1929, she had recovered judgment for one thousand dollars on

account of injuries which she testified she received by being thrown against the steering wheel and windshield of an automobile. It also appeared that, in an action brought by respondent for a divorce, she had testified that she had been rendered nervous and that her health had been injuriously affected by her marital troubles. In the case at bar, medical testimony was introduced to the effect that some of respondent's physical ailments were of long standing and were not caused by any trauma.

It clearly appears that, in the accident which was the basis of the 'case at bar, respondent was severely injured. We cannot say that the verdict as rendered by the jury was the result of passion or prejudice, or that the amount of the judgment entered, after respondent had accepted the reduction suggested by the trial court, is so excessive as to require the granting of a new trial by this court.

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, C. J., STEINERT, HERMAN, and MAIN, JJ., concur.