[No. 28789.    Department One.    November 25, 1942.]

LYN HARDMAN, *Respondent,* v. ROBERT A. YOUNKERS *et al., Appellants.*[1]

[1]Reported in 131 P. (2d) 177.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frank Hunter,* for appellants.

*Will G. Beardslee* and *George F. Ward,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover for property damage occasioned by an automobile colli-

sion. He alleged in his complaint that, while his Ford automobile was parked alongside the curb of a city street, defendant Robert A. Younkers negligently drove his Chevrolet automobile into the rear of the Ford, knocking it over the curb and shoving it violently against a telephone pole, as a result of which the value of the Ford car was virtually destroyed. Defendants answered denying generally the allegations of negligence and, by way of affirmative defense, pleaded that the collision was the result of an unavoidable accident. Plaintiff in his reply denied the allegations contained in the affirmative defense.

At the conclusion of plaintiff's case in chief, defendants challenged the sufficiency of the evidence to make a *prima facie* case of negligence against them. The challenge was overruled. At the conclusion of all the evidence, defendants challenged its sufficiency, upon the entire record, to warrant any recovery for plaintiff. The court reserved its ruling on that challenge, and the cause was then argued upon its merits and submitted for final decision, following which the court rendered its oral decision in favor of plaintiff. Defendants' motion for judgment notwithstanding the decision and their alternative motion for a new trial were both denied. The court thereafter made findings of fact from which it concluded that plaintiff was entitled to recover against defendants. Judgment was entered accordingly and defendants appealed.

The questions presented upon the appeal necessitate a statement of the evidence adduced by the respective parties. Respondent's evidence was in substance as follows:

The accident occurred on Empire way, a short distance north of Graham street, in the city of Seattle, at about three o'clock on a September afternoon. Empire way in that vicinity has three traffic lanes on each side.

The day was clear and bright, the streets were dry, and no unusual traffic conditions were present.

Respondent's eighteen year old son and two of his high school classmates were using respondent's 1939 Ford car upon a trip in search of specimens of insects, which they were collecting for study in connection with their scholastic course in zoology. They parked the car along and parallel with the curb on the east side of Empire way, at a point variously estimated by them at from twenty-five to forty feet, or more, south of a telephone pole. Respondent's son testified that the car was left in gear, with its brakes set. The party of three then proceeded to a slough, or swamp, located a short distance from, and below the level of, Empire way, and began their search for insects.

About a half-hour later, while thus engaged, they heard a loud crash. Looking in the direction of Empire way, they saw the Ford car "bounding" forward and being forcibly shoved by the Chevrolet toward and against the telephone pole. They rushed to the scene of the accident and found the Ford car resting against the pole with all four wheels on the parking strip. The front and side of the car had been badly smashed by striking against the pole, and the back end of the car had also been seriously damaged by being run into from the rear. The impact against the telephone pole had been of such force as to loosen its crosspiece, requiring replacement by the owner thereof. The Chevrolet car had come to rest on the street, against the curb and slightly ahead of the Ford.

The right front end of the Chevrolet was in a badly battered condition. The front bumper was broken off at the center, the right front fender was demolished, the grill and right headlight were crushed, and the right front wheel assembly lay some distance back of the two cars, the exact point however being uncertain. As will appear later herein, one of the principal dis-

puted issues of fact here involved is the question whether the wheel was knocked off in the collision, or whether it became detached before the cars collided.

There was testimony that a telltale scratch mark or gouge, freshly made, appeared on the pavement, beginning at the point where the back end of the Ford had stood while parked, and running continuously, except for a skip of about five feet, along the street to the point where the Chevrolet came to rest. The scratch mark was made by the spindle, or stub axle, of the Chevrolet scraping along the pavement after the wheel had become detached. Its course at first ran almost parallel with the curb, then veered to the right and continued to the point where the Chevrolet stopped against the curbing. There was also testimony that upon the pavement was an area of dirt which had dropped from the Ford at the place of collision, and that the scratch mark ran through this area.

One of respondent's witnesses testified that, immediately after the accident, and in reply to a question by respondent's son as to what had happened, appellant said he had "turned to knock the ashes out of his pipe." Another witness quoted appellant as having said: "I don't see what happened. It must have happened when I knocked the ashes out of my pipe it happened." The same witness testified that she saw a pipe in the possession of appellant.

The evidence adduced by appellant was of a different tenor. It may be summarized as follows: In November, 1939, Mr. Younkers, to whom we shall refer as though he were the sole appellant, bought a used 1936 Chevrolet car and at the time of the occurrence in question had driven it eighteen thousand miles. In June, 1941, a few months before the accident, he decided to make a trip to Yellowstone Park and, in preparation therefor, had the brake drums relined at

an established garage. He then submitted the car to a state inspection test, which showed that the brakes, wheel alignment, and front wheel assembly were all in good repair. The car operated perfectly on the trip and, according to appellant's testimony, continued so to perform in Seattle until a few seconds before the collision.

There was testimony to the effect that, just prior to the time of the accident, appellant was driving north along the second, or middle, lane of Empire way at a speed of about thirty miles per hour, when suddenly his right front wheel assembly dropped off, causing his car to lurch sideways into the extreme right, or outer, lane and crash into the rear end of the parked Ford. At first, appellant, being somewhat dazed by the impact, did not realize what had taken place, but shortly thereafter a friend, who had been following him in another automobile, informed him what had caused his car to get out of control. It was testified that the spline shaft had become disengaged from the right front wheel, causing the wheel to drop off and precipitating the right knee-action assembly to the pavement; this, in turn, caused appellant's car to swerve to the right and at the same time deprived it of any braking power; in that condition, the car ran forward until it struck the Ford, causing the damages to both cars as already described. The wheel itself, however, was not damaged.

Three witnesses, one of whom was appellant's friend, the other two being strangers, testified that they were driving behind appellant and saw the wheel drop off before the moment of collision and that it finally came to rest on the ground a short distance back of where the Ford car had originally stood. Photographs of the scene were taken while the cars were still at the places where they had come to rest. The photographs showed

the greater portion of the scratch mark, which by tape-measurement began at a point sixty-three feet back of the rear axle of the standing Chevrolet, and forty-nine feet behind the rear axle of the Ford resting at the foot of the telephone pole. The scratch mark ran almost continuously from the point where it began to the place where the Chevrolet finally stopped. Accepting the testimony of respondent's witnesses who estimated the distance from the telephone pole to the point where the Ford car was originally parked as being from thirty to forty feet, appellant contends that it is thus conclusively established that the wheel of his automobile dropped off at a point twenty-five or more feet south, or back, of the point of collision, giving rise to an unavoidable accident.

In his oral decision, rendered immediately after the close of the testimony, the trial judge made certain observations including, among others, a reference to the matter of burden of proof on the issue of "unavoidable accident," and one of appellant's principal assignments of error is based upon that expression by the court. However, after all post-trial motions had been denied, the trial court made formal findings of fact reciting specifically that appellant had carelessly, negligently, and unlawfully run into respondent's automobile.

The appellant first assigns error in that at the conclusion of respondent's evidence in chief the court denied the challenge to its sufficiency to make a *prima facie* case of negligence against appellant. Ordinarily, the mere fact that an automobile accident has occurred is not of itself proof of negligence on the part of a driver. However, under the doctrine of *res ipsa loquitur*, when an accident or injury is such as in the ordinary course of events does not happen if the person in charge of the motor vehicle uses proper care, proof of the occurrence of an injury and the circumstances

surrounding it may, in the absence of contrary evidence, give rise to an inference of negligence on the part of the driver of the offending vehicle and thus make out a *prima facie* case of negligence against such driver, placing upon him the burden of explaining the accident and showing that it did not occur through want of care on his part. *Kolbe v. Public Market Delivery & Transfer*, 130 Wash. 302, 226 Pac. 1021, and cases therein cited; 15-16 Huddy, Cyclopedia of Automobile Law (9th ed.), p. 280, § 157; 9 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) part 2, p. 299 *et seq.*, § 6043; 5 Am. Jur. 839, Automobiles, § 607; 42 C. J. 1204, Motor Vehicles, § 1004.

The evidence submitted by respondent brings this case within the application of the *res ipsa loquitur* rule. The fact that the collision occurred, under the above factual situation, raised an inference of negligence on the part of the appellant. The circumstances are such that normal experience dictates that the injury would not have occurred, in the absence of negligence on the part of appellant, unless some extraordinary, unusual thing transpired. Appellant was operating, and was supposedly in control of, his moving automobile; respondent's car was properly parked and could not have been a factor in the cause of the injury; traffic, weather, visibility, and street conditions were in no way contributing elements; and the occurrence demanded an explanation, which appellant alone could supply.

In *Bryne v. Great Atlantic & Pacific Tea Co.*, 269 Mass. 130, 168 N. E. 540, it appeared that defendant's truck ran into a machine known as an excavator, which the owner had lawfully stationed on a public street, near the curb. In affirming a judgment for damages in favor of the plaintiff, the supreme judicial court of Massachusetts said:

"No discussion is required to demonstrate that the unexplained collision of a motor truck in the circumstances here disclosed with an object of the size and nature of an excavator stationary on the highway is some evidence of negligence on the part of the driver of the truck. Although the doctrine of *res ipsa loquitur* does not apply to collisions between moving vehicles on a highway, *Reardon v. Boston Elevated Railway,* 247 Mass. 124 [141 N. E. 857], it is plain that that principle does apply under the circumstances here disclosed. In the ordinary experience of mankind a moving vehicle does not without negligence of those responsible for it come into collision with a stationary object of the size of an excavator. [Citing cases.]"

To the same effect are the following cases involving situations where a moving motor vehicle collided with a stationary vehicle alongside a curb: *Bauhofer v. Crawford,* 16 Cal. App. 676, 117 Pac. 931; *Slappey v. Schiller,* 116 Cal. App. 274, 2 P. (2d) 577; *Loprestie ·v. Roy Motors,* 191 La. 239, 185 So. 11; *Waite v. Boutross,* 225 Mo. App. 724, 39 S. W. (2d) 454; *Howlett v. Randol,* 39 S. W. (2d) (Mo. App.) 463; *Ross v. Nevin Bus Lines,* 9 N. J. Misc. 412, 154 Atl. 198; *Rosenberg v. American Ry. Express Co.,* 198 N. Y. Supp. 224. A very able discussion of the doctrine of *res ipsa loquitur* in Washington, together with a collection of the cases bearing thereon, as presented by Mr. Max Kaminoff, will be found in 13 Wash. L. Rev. 215 (1938).

The trial court in the case at bar did not commit error in overruling appellant's initial challenge to the sufficiency of respondent's evidence to make a *prima facie* case of negligence against appellant.

The next assignment of error suggested by the appellant is based upon his contention that in its oral decision the trial court proceeded upon the assumption that "unavoidable accident" is an affirmative defense, casting upon the party relying thereon the burden of proving that he was not guilty of negligence which

proximately caused the injury. It is true, as appellant contends, that the defense of unavoidable accident is available under a general denial, if raised by the evidence, and need not be specially pleaded. *Carlisle v. Central of Georgia R. Co.*, 183 Ala. 195, 62 So. 759; *Pearce v. Elbe*, 98 Cal. App. 101, 276 Pac. 389; *Sitkei v. Ralphs Grocery Co.*, 25 Cal. App. (2d) 294, 77 P. (2d) 311; *Jolley v. Clemens*, 28 Cal. App. (2d) 55, 82 P. (2d) 51; *Lehnerts v. Otis Elevator Co.*, 256 S. W. (Mo.) 819; *Seele v. Purcell*, 45 N. M. 176, 113 P. (2d) 320; *Stamos v. Portland Electric Power Co.*, 128 Ore. 310, 274 Pac. 915; *El Paso Electric Co. v. Portillo*, 37 S. W. (2d) (Tex. Civ. App.) 219; *Greer v. Thaman*, 55 S. W. (2d) (Tex. Civ. App.) 519; *Sterling v. Community Natural Gas Co.*, 105 S. W. (2d) (Tex. Civ. App.) 776; *Sproles Motor Freight Lines v. Juge*, 123 S. W. (2d) (Tex. Civ. App.) 919; see 45 C. J. 1140, Negligence, § 730.

▮ Since a general denial puts in issue all the facts alleged as constituting the negligence charged, and since proof of "unavoidable accident" in its very nature tends to refute or rebut such charge as alleged in the complaint, the burden of proof on the issue of negligence remains with the plaintiff throughout the case and does not shift to the defendant upon his attempt to disprove negligence by showing that the injury came about through an unavoidable accident. Although a plaintiff may have made a *prima facie* case of negligence through the application of the doctrine of *res ipsa loquitur*, he still has the burden of proof or, as is sometimes expressed, the burden of making the better case, upon that issue when finally submitted to the trier of the fact. In such situations, the only "burden" resting upon the defendant is simply that of going forward with the evidence at the proper time, furnishing an explanation of how the accident happened and showing that it did not occur by reason of lack of due care on

his part. When the defendant has done that, the whole case must be submitted to the trier of the fact, whose duty then is to determine whether the plaintiff has established negligence, injury, and damages, by a preponderance of the evidence. The proper rule has been well stated in *Briglio v. Holt & Jeffery,* 85 Wash. 155, 147 Pac. 877, wherein it was said:

"The proper instructions as to the application of the presumption [arising under the doctrine of *res ipsa loquitur*] would be thus: The jury should be instructed that the burden of proof is upon the plaintiff to establish all the controverted allegations of his complaint by a fair preponderance of the evidence, and defining preponderance of the evidence; that when a situation is shown which necessarily infers negligence on the part of defendant or *res ipsa loquitur,* the burden then devolves upon defendant to furnish an explanation or rebuttal of that presumption of negligence, by producing evidence of his due care and proper precaution, under the circumstances and conditions necessarily within defendant's exclusive control. If then, after considering such explanation, on the whole case and on all the issues as to negligence, injury and damages, the evidence still preponderates in favor of the plaintiff, plaintiff is entitled to recover; otherwise not."

Accord: *Abrams v. Seattle,* 60 Wash. 356, 111 Pac. 168; *Penson v. Inland Empire Paper Co.,* 73 Wash. 338, 132 Pac. 39, L. R. A. 1915F, 15; *McClellan v. Schwartz,* 97 Wash. 417, 166 Pac. 783; *Singer v. Metz Co.,* 107 Wash. 562, 182 Pac. 614, 186 Pac. 327; *Genero v. Ewing,* 176 Wash. 78, 28 P. (2d) 116; *Lauber v. Lyon,* 188 Wash. 644, 63 P. (2d) 389; *Lang v. Puget Sound Navigation Co.,* 189 Wash. 353, 65 P. (2d) 1069; *Taylor v. Lubetich,* 2 Wn. (2d) 6, 97 P. (2d) 142. See, also, Harper, Torts (1933), § 77, p. 181 *et seq.*

It is true, as indicated above, that appellant did not rely merely on a general denial, but also set up affirmatively a plea of "unavoidable accident." That fact, however, does not change the rule respecting the

burden of proof, because the special plea was not in the nature of a confession and avoidance; it did not amount to anything more than a denial of negligence; and it was purely gratuitous. *Jolley v. Clemens*, 28 Cal. App. (2d) 55, 82 P. (2d) 51; *El Paso Electric Co. v. Hedrick*, 39 S. W. (2d) (Tex. Civ. App.) 128 (reversed on other grounds, 60 S. W. (2d) 761).

Although, on the question of the burden of proof, we have thus interpreted the law in consonance with appellant's contention, that interpretation does not dispose of the case in appellant's favor. While the trial court may have used some language in its oral decision to the effect that the defense of unavoidable accident had not been established by the preponderance of the evidence, thus indicating inferentially that the burden in that respect was upon the appellant, a reading of the entire oral decision makes it quite clear that the court decided the case upon the theory that the preponderance of all the evidence upon the issue of negligence was in favor of the respondent. In fact, in the very sentence in which the court referred to the failure of appellant to establish the defense of unavoidable accident by the preponderance of the evidence, the court concluded by saying:

"In my opinion, the physical facts in this case, together with the admissions made by the defendant [appellant] shortly after the impact, clearly established that the defendant was guilty of negligence."

The court might well have added that respondent's evidence in the form of testimony by his witnesses likewise supported that conclusion. Moreover, after the matter had again been argued on post-trial motions, the trial court made a formal finding to the effect that the injury was caused by the negligence of the appellant.

There was sufficient evidence to sustain the trial court's findings of negligence. The force with which

respondent's car struck the utility pole, after having been forced over the curb and shoved some distance on the parking strip, and the physical damage done, taken in connection with all the other circumstances of the case, were sufficient to establish excessive speed as determined by the court. *Copeland v. North Coast Transportation Co.*, 169 Wash. 84, 13 P. (2d) 65; *Comstock v. Smith*, 183 Wash. 94, 48 P. (2d) 255; *Oyster v. Dye*, 7 Wn. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720; *Engel v. Interstate Transit Co.*, 9 Wn. (2d) 590, 115 P. (2d) 681; *Johnson v. Ohman*, 10 Wn. (2d) 466, 117 P. (2d) 217; *Hauswirth v. Pom-Arleau*, 11 Wn. (2d) 354, 119 P. (2d) 674.

Credible evidence was introduced to the effect that the gouge in the pavement, made by the spindle of appellant's car, began at the point of impact and not before, from which it is a logical inference that the wheel fell off in consequence of the collision, thus contradicting the statements of the witnesses who testified that they saw the wheel drop off before the cars collided. There was also credible evidence that the scratch marks on the pavement were never more than four feet away from the curbing, indicating that appellant was traveling in the outer lane immediately behind respondent, and not, as he claimed, in the second lane. Several witnesses testified that appellant admitted that the accident must have happened when he turned to knock the ashes out of his pipe; this would clearly show inattention on his part, to which the trial court made specific reference in its oral decision.

It is a well-known rule that in a case tried to the court its findings of fact will not be disturbed unless the evidence preponderates against them. *Warner v. Keebler*, 200 Wash. 608, 94 P. (2d) 175; *Gensman v. West Coast Power Co.*, 3 Wn. (2d) 404, 101 P. (2d) 316; *Olsen v. John Hamrick's Tacoma Theatres*, 9 Wn. (2d)

380, 115 P. (2d) 718; *Stangle v. Smith,* 10 Wn. (2d) 461, 117 P. (2d) 207; *Sievers v. Sievers,* 11 Wn. (2d) 446, 119 P. (2d) 668.

The evidence in this case upon the issue of negligence does not preponderate against the findings of the court, and they will therefore not be disturbed.

One question remains to be considered. A witness for respondent testified on cross-examination that the spindle which had held the missing wheel to the chassis of the Chevrolet car showed a fresh break. Later, on rebuttal, the witness was recalled and, over the objection of appellant, again testified to the same effect. Appellant assigns error in permitting the witness to testify on the same subject matter on rebuttal. Appellant cites *Kimble v. Stackpole,* 60 Wash. 35, 110 Pac. 677, 35 L. R. A. (N. S.) 148, in which this court held that the trial court properly refused to *recall* the witnesses who had testified in chief.

Suffice it to say that the question of the precise limits of rebuttal evidence is a matter resting largely in the discretion of the trial court, and the action of the court in such matters will not be reviewed except for manifest abuse resulting in prejudice to the complaining party. *Cullen v. Kimbro,* 170 Wash. 314, 16 P. (2d) 445; *Kelly v. Department of Labor & Industries,* 172 Wash. 525, 20 P. (2d) 1105; *W. E. Roche Fruit Co. v. Northern Pac. R. Co.,* 184 Wash. 695, 52 P. (2d) 325. It is plain that there was no prejudice in this instance; the evidence was, at most, merely cumulative.

The judgment is affirmed.

ROBINSON, C. J., MILLARD, JEFFERS, and DRIVER, JJ., concur.